IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 7 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JAMES DAVID GILBERT | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-04-047 |
| | § | |
| RIG VENTURES, INC.; EMILIO SANCHEZ; | § | |
| PHIL WELLS; RICHARD JAROSS; and | § | |
| MODU "OCEAN 66" | § | |
| Defendants. | § | |

## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

**Richard Jaross**, Defendant herein ("Movant"), files this Motion for Summary

Judgment, and would show:

1.      There are no controverted fact issues concerning the two separate causes

of action asserted against Movant, and Plaintiff cannot establish the existence of

certain elements necessary to his case against Movant.

2.      Movant is an individual who was an independent contractor to the

Defendant **Rig Ventures, Inc.** in the work being performed aboard the

MODU "Ocean 66" when Plaintiff suffered an injury.

3.      As an independent contractor, Movant contracted with

Defendant Rig Ventures, Inc. to perform a certain task aboard the MODU "Ocean 66"

according to his own method and without being subject to the control of Rig Ventures,

Inc. except as to the result of his work. In exchange for this service, Movant was to receive a fixed fee and he was not to share in the profits or losses of such an operation. Specifically, Movant was engaged to remove certain large tanks on vessels and the attendant valves from the decks of the MODU "Ocean 66". See deposition of Emilio Sanchez attached in relevant part as Exhibit A.

4.    Movant was not an agent of Rig Ventures, Inc and Plaintiff cannot establish the existence of express authority granted by Rig Ventures, Inc. to Movant whereby he became an agent.

5.    Movant is defined by Plaintiff as an agent of Rig Ventures, Inc. at paragraph 34 of his Plaintiff's Fifth Amended Complaint under General Maritime Law and State Law which constitutes a judicial admission; yet, Movant is also alleged to have been engaged in a joint enterprise or joint venture with Rig Ventures, Inc. Plaintiff cannot establish the elements necessary to sustain both such allegations because they are mutually exclusive.

6.    Plaintiff cannot establish an element necessary to find Movant was either a joint venturer or engaged in a joint enterprise with Rig Ventures, Inc. Specifically, Plaintiff cannot establish that Movant was to share in the profit or losses of the sale of the vessels and valves which was the enterprise in which Rig Ventures, Inc. was engaged when Plaintiff was injured. Plaintiff cannot establish that Movant had an equal voice in the sale of the vessels and valves which was the enterprise in which

Rig Ventures, Inc. was engaged when Plaintiff was injured. <u>See</u> Movant's deposition attached in relevant part as Exhibit B.

7.    Absent establishment of the elements named, Plaintiff cannot prove that Movant was a joint venturer with or engaged in a joint enterprise with Defendant Rig Ventures, Inc.

Movant prays this Motion for Summary Judgment be set for submission and, upon submission, judgment be entered dismissing Richard Jaross from such litigation with his costs and such other and further relief to which he may be entitled in law and in equity.

DATED: September _7_, 2004.

Respectfully submitted,

**FLEMING & HERNANDEZ, P.C.**
1650 Paredes Line Road, Suite 102
Brownsville, Texas 78521-1602
Telephone: (956) 982-4404
Telecopier: (956) 982-0943

by:_____
**Tom Fleming**
State Bar of Texas No. 07133000
Federal I. D. No. 1188

**Luis R. Hernandez**
State Bar of Texas No. 09518900
Federal I.D. No. 12978

**ATTORNEYS FOR RICHARD JAROSS.**

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing MOTION FOR SUMMARY JUDGMENT were served September ___7___, 2004 in the manner(s) indicated below upon the following Counsel-of-record:

> **CO-COUNSEL FOR PLAINTIFF,**
> **JAMES DAVID GILBERT:**
> Scott D. Webre
> 556 Jefferson Street
> Jefferson Towers, Suite 200
> Lafayette, Louisiana 70501
> *(CERTIFIED UNITED STATES MAIL, R.R.R., #7003 1680 0006 5137 7196)*
>
> **CO-COUNSEL FOR PLAINTIFF,**
> **JAMES DAVID GILBERT:**
> Ryan Krebs, M.D., J.D.
> 6601 Vaught Ranch Road, Suite 100
> Austin, Texas 78730
> *(CERTIFIED UNITED STATES MAIL, R.R.R. #7003 1680 0006 5137 7202)*
>
> **CO-COUNSEL FOR PLAINTIFF,**
> **JAMES DAVID GILBERT:**
> Frank Costilla
> THE LAW OFFICES OF FRANK COSTILLA, L.P.
> 5 East Elizabeth Street
> Brownsville, Texas 78520
> *(CERTIFIED UNITED STATES MAIL, R.R.R., #7003 1680 0006 5137 7219)*

Tom Fleming

CAUSE NO. 2002-11-4448-D

| | | |
|---|---|---|
| JAMES DAVID GILBERT | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| VS. | ) | CAMERON COUNTY, TEXAS |
| | ) | |
| | ) | |
| RIG VENTURES, INC.; EMILIO | ) | |
| SANCHEZ and PHIL WELLS | ) | 103RD JUDICIAL DISTRICT |

### ORAL AND VIDEOTAPED DEPOSITION OF EMILIO SANCHEZ

JANUARY 28, 2004                              BROWNSVILLE, TEXAS

~~~~~~~~A Better Court Reporting Service, Inc.~~~~~~~~

TRESSA GRANGER, PRESIDENT

Certified Shorthand Reporters
P.O. BOX 685229, AUSTIN, TEXAS 78768-5229
1-800-478-1989, 1-512-478-2968 (FAX)



EXHIBIT NO. A

CAUSE NO. 2002-11-4448-D

| | | |
|---|---|---|
| JAMES DAVID GILBERT | ) | IN THE DISTRICT COURT |
| | ) | |
| VS. | ) | CAMERON COUNTY, TEXAS |
| | ) | |
| RIG VENTURES, INC.; EMILIO | ) | |
| SANCHEZ and PHIL WELLS | ) | 103RD JUDICIAL DISTRICT |

-----------------------------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

EMILIO SANCHEZ

JANUARY 28, 2004

-----------------------------------------------------------

ORAL DEPOSITION OF EMILIO SANCEZ, produced as a witness duly sworn by me at the instance of the Plaintiff James David Gilbert, taken in the above-styled and numbered cause on the 28th day of January 2004, from 9:51 a.m. to 3:28 p.m., before Karen Geddes Piland, Certified Shorthand Reporter No. 5627, in and for the State of Texas, at the offices of Fleming & Hernandez, P.C, 1650 Paredes Line Road, Suite 102, Brownsville, Texas, pursuant to the Texas Rules of Civil Procedure (and the provisions stated on the record or attached hereto).

1  corporation?

2  A.  One of them.  I don't recall.  It could be Sanco,

3  it could have been Saber, it could have been Rig

4  Ventures.  One of the three probably.  I don't recall

5  which one.

6  Q.  What is the substance of the consultation

7  agreement between you and Mr. Jaross?

8  A.  That he would handle the technical end of the

9  operation and I would handle the financing.

10  Q.  Do you know what technical expertise Mr. Jaross

11  has concerning ship-breaking and ship salvage?

12  A.  His many years of experience have done that,

13  since nineteen -- salvaging of several things, many

14  years, all his life.

15  Q.  Do you know what licenses or certifications,

16  training, that kind of thing, that Mr. Jaross may have?

17  A.  I do not know.

18  Q.  Have you ever known?

19  A.  Nothing I'd ever asked and I don't know.

20  Q.  Okay.  And in exchange for Mr. Jaross's technical

21  assistance, what -- what's his compensation?  How is he

22  paid?

23  A.  He's paid a consultant fee off of different

24  corporations.

25  Q.  And how is that consultant fee determined?

1  asked you this, I apologize -- but that's responsible

2  for the determination of the skill levels of people you

3  hire as labor?

4      A.  No.  I would consider Richard Jaross to be -- his

5  recommendation I would rely on.

6      Q.  Okay.  So Mr. Jaross is the one who's making

7  determinations regarding the adequacy of the expertise

8  of persons employed by Rig Ventures to perform salvage?

9      A.  That's correct.  Uh-huh.  That's correct.

10     Q.  And you rely on any recommendations and

11 determinations he makes in this regard?

12     A.  Yes.  I would think that a hundred percent of the

13 time I would go along with his recommendation.

14     Q.  Do you know what efforts Mr. Jaross made to make

15 those determinations regarding the skill level or

16 expertise or training of persons that would board

17 vessels owned and operated by Rig Ventures?

18     A.  He had prior knowledge of the people he was

19 asking to do work over the years just from experience.

20     Q.  Do you have any specific knowledge regarding what

21 he knew about these people?

22     A.  What people?

23     Q.  The persons that Rig Ventures would put aboard

24 Ocean 66 to perform salvage operations.

25     A.  Yes.  I knew that Frank Ruiz, Junior, had done

1   salvage operations for us for 30 years.

2       Q.   Okay.

3       A.   And then he would -- Frank would get his crew.   I

4   don't -- he would get his crew.   Sometimes he used

5   his -- most of the time he used his son.   But this has

6   been over a 30-year period that Richard knew about these

7   people and the companies that we hire.   He had specific

8   knowledge of who he was hiring.

9       Q.   But specifically what he knew about them, you

10  don't know.   I'm going to have to ask Mr. Jaross; is

11  that fair to say?

12      A.   I would think on the majority -- yes, I would say

13  the majority of the case he would hire a company to do

14  towing and he'd have hired them before, and I don't know

15  who they are.   But he would get the rate and the

16  conditions and the daily charge and the fuel charge and

17  negotiate all of them things, towing contracts.   I

18  didn't do the towing contracts.   He did the towing

19  contracts.

20      Q.   And from your perspective, anyway, the same would

21  hold true with regard to the actual manual labor that is

22  employed to get aboard the vessel and conduct

23  operations?

24      A.   I would -- yes, that would be correct.

25      Q.   And to be fair, a few minutes ago you spoke about

1  too.

2         THE WITNESS:  Was that a Delaware

3  Corporation?

4         MR. HERNANDEZ:  And I'm not sure where --

5  who --

6         THE WITNESS:  Then I might have it in that

7  file there.

8    Q.  What would you maintain in your financial file

9  you just referenced?

10    A.  The monthly P&L and the -- maybe some

11  certificates of good standing from the Delaware

12  Corporation and things of that nature.

13    Q.  What about loan ledgers?  Do you maintain a

14  document, a ledger or a spreadsheet of any kind that

15  would reflect the outstanding principal and interest and

16  payments due and received and that sort of thing by and

17  between or loans by and between yourself and your

18  corporations?

19    A.  My daughter has that.  My CPA has that.  She has

20  promissory notes between corporations with interest

21  bearing and things.

22    Q.  And do you know -- have you seen those

23  spreadsheets?

24    A.  I have seen them over a period of time.  I

25  haven't seen them lately.

1  signature, generally I would have to sign it.

2     Q.  Okay.  But if it didn't require a signature, he

3  would probably handle that?

4     A.  He would probably handle that.

5     Q.  Is it fair to say that aside from Mr. Jaross,

6  whatever skills or expertise he may have, that there was

7  no employee or no officer or director of Rig Ventures

8  with expertise in oil field salvage?

9     A.  I would say that's correct.

10     Q.  Is your daughter still handling the bank

11  statements today?

12     A.  Yes.

13     Q.  And so -- and she has been for the last five

14  years?

15     A.  At least.  Many more years than that.

16     Q.  Is it fair to say that all of the operational

17  oversight regarding, you know, the materials supplied,

18  the labor provided, what task would be performed, when

19  it would be performed and that sort of thing, all of the

20  operational oversight regarding the salvage operations

21  aboard Ocean 66 was at the direction of Mr. Jaross?

22     A.  I would say yes.

23     Q.  And that was pursuant to direction and authority

24  from you as president of Rig Ventures?

25     A.  That is correct.

1  conducting or directing the daily affairs of the salvage

2  operations, correct?

3      A.  Well, operating, I wouldn't consider that,

4  because sometimes we would hire a company called Unifab

5  in Lake Charles who is a subcontractor -- I mean a

6  contractor, and he would do certain things and we

7  wouldn't supervise him.

8      Q.  Sure.  And I understand there may be times when

9  that would occur, but you would also agree, though,

10  would you not, that by and large he was directing the

11  activities, the salvage activities that would be

12  performed and when they would be performed aboard the

13  Ocean --

14     A.  Yes, I would think so.  Uh-huh.  But as far as

15  operational, I look at operational -- he was on the rig

16  directing the people like Frank Garcia -- Frank Ruiz,

17  Senior, would do, or Phil Wells would do.  Richard

18  didn't do that.  He would just tell Frank this is what

19  we want done, go get your people and go get your, you

20  know, get your equipment and get your -- make your

21  arrangements and do it.  But he wouldn't -- Richard

22  would not go physically on the rig and watch it done.

23     Q.  But he did -- he did visit the Ocean 66 on

24  occasion when the crew was aboard the Ocean 66

25  performing salvage operations, did he not?

A BETTER COURT REPORTING SERVICE, INC.
(512) 478-1989

64

1    Q.   Okay.  Now, do you know where Mr. Jaross's

2    residential address is?

3    A.   About half a block from here.  It's --

4    Q.   If you don't know, that's fine.

5    A.   It's -- I don't know.  It's -- I don't recall the

6    name.

7    Q.   Do you know the street name?

8    A.   Yeah, I was trying to think of the street name.

9    184 Shallow Brook or something like that, Shallow Lane.

10   I'm not exactly sure of the street address.

11   Q.   Do you know whether Esco Marine is a company

12   involved in the salvage of a U.S. Armed Services boat

13   that has been decommissioned, I think, in Corpus

14   Christi?

15   A.   They are the owners of that one.  A joint venture

16   with another company called Resolve Marines.

17   Q.   Are you involved in that project at all?

18   A.   Not now, because I sold my company.

19   Q.   Right.

20   A.   But Esco has got that contract with the Navy.

21   That's with the Navy.

22   Q.   And Rig Ventures isn't involved at all?

23   A.   No.

24   Q.   So is it fair to say, then, in connection with

25   the operations, salvage operations aboard the Ocean 66,

A BETTER COURT REPORTING SERVICE, INC.
(512) 478-1989

1  that Mr. Jaross was directing the operational aspect of

2  things and you were directing the financial aspect of

3  things; is that correct?

4      A.  That's correct.

5      Q.  And so that you each had a say in the direction

6  that Rig Ventures and the salvage of Ocean 66 was going?

7      A.  That would be correct.

8      Q.  Who -- or strike that.

9          Are you aware of any state or federal

10  statutory or regulatory requirements put upon the owner

11  of a vessel such as the Ocean 66 to provide a safe

12  workplace, including adequate supervision and training

13  of persons working aboard?

14      A.  I'm not -- I'm not familiar with that, but there

15  probably is.

16      Q.  Okay.  Who of Rig Ventures would be the person to

17  speak to about that?

18      A.  I would think Richard Jaross is more aware of it

19  than I am.

20      Q.  Have you and Mr. Jaross ever discussed any state

21  or federal regulatory requirements pertaining to salvage

22  operations conducted by Rig Ventures?

23      A.  In reference to state or federal regulations?

24      Q.  Any regulations, state, federal, local.

25      A.  Yes, we have.  Coast Guard regulations and what

1    A.   I would think so.   The only copy I've ever seen

2    around is that one.   I'm pretty sure it would be the

3    same one.

4              MR. WEBRE:   Luis, can we agree that this is

5    a business record and in the event that the signed one

6    comes in, then would you supply us with that one?

7              MR. HERNANDEZ:   That's fine.

8    Q.   Mr. Sanchez, your lawyer and I spoke about how we

9    should best conduct an inquiry into the cash flow of Rig

10   Ventures in years 2001 and 2002, and for that matter,

11   I'll have to look at it, but potentially in 2000 which

12   would go back to the beginning of the Ocean 66 project.

13   And given that we are lacking some of the documents here

14   today, I think it's been agreed that we will postpone

15   those questions until a time where we have the documents

16   and you can designate the person you would like to

17   testify about that.

18   A.   That would be fine.

19             MR. WEBRE:   Is that okay Mr. Hernandez?

20             MR. HERNANDEZ:   Yes.

21   Q.   Did Richard Jaross have authority to -- I mean,

22   say, one of these occasions where he visited the Ocean

23   66, if he saw that work wasn't being performed pursuant

24   or to his satisfaction he could fire people on that

25   platform?

1    A.    Yes.

2    Q.    He could have fired Frank Ruiz, Senior, if he

3    wanted to?

4    A.    Yes.

5    Q.    He could have fired Phil Wells if he wanted to?

6    A.    Yes.

7    Q.    Or any of the other laborers on board?

8    A.    Yes.

9    Q.    Do you recall how you paid the laborers including

10   Phil Wells and Jamie Gilbert in connection with their

11   work on Ocean 66?

12   A.    I'd pay them on a day rate whatever work days

13   they work.    It would start out at 75 and it got up to

14   125 or something like that a day.

15   Q.    And it probably varied from one to another,

16   perhaps?

17   A.    Yeah.    It went from -- when it was out at ocean,

18   it went one rate and I think when it was -- they do

19   these special jobs, maybe a little higher.    But the one

20   that kept those records was Frank Ruiz and Phil Wells on

21   the particular job.    Frank Ruiz was in charge out at

22   the -- when the Ocean 66 was out on the Gulf of Mexico

23   and brought it all the way into Port of Lake Charles,

24   then everybody got off.

25        Then we would have special jobs of removing

1    they provided?

2        A.   Yes.   Uh-huh.

3        Q.   And he was the one approving the various

4    expenditures?

5        A.   That's correct.   I would send it to him and he

6    would put his okay on it.

7        Q.   And we can go through all of these, but I'd

8    really rather not.   Is that generally true with regard

9    to the expenses for equipment, supplies, materials and

10   services aboard Ocean 66, that Mr. Jaross would okay the

11   expenditure and then you would authorize the payment?

12       A.   That is correct.   Those are the sheets they'd

13   send me and I'd pay them.

14       Q.   Turning about five or six pages, there's an

15   invoice from Aqua Air Industries, and perhaps it's more

16   than that.

17           MR. HERNANDEZ:   Do you have a Bates stamp on

18   the bottom?

19           MR. WEBRE:   Yeah, but it's like it was out

20   of -- you know what, all of these are Bates stamped.

21   Why don't you let me have mine back and we'll just --

22           THE WITNESS:   You won't believe it, but

23   there's not a 43 in here.   Forty -- oh, okay.   Excuse

24   me.   Okay.

25       Q.   This document is Bates numbered 61?

1   that Mr. Jaross, while he would direct what to do and

2   when to do it, he wouldn't actually be looking over

3   anyone's shoulder and telling them how to do it.

4       A.  I never saw him do that, no.

5       Q.  Would you agree with me, though, that if aboard

6   the Ocean 66, he would certainly have the right to stop

7   someone from doing something in a way he wasn't pleased

8   with or to direct something be done in a way he thought

9   it needed to be done?

10      A.  I would assume he -- yeah, I would think he had

11  that authority.  I was given authority to do that.  When

12  a subcontractor is not doing what you want him to do,

13  you have the right to discharge him.

14      Q.  And to tell them how to do it?

15      A.  Or -- yeah, if he doesn't follow the directions,

16  then you -- he's not doing what you want him to do, then

17  you discharge him.

18          MR. WEBRE:  That's all the questions I have

19  for now.  Reserve any right for further questions based

20  on the need.

21          MR. HERNANDEZ:  We reserve all our questions

22  until the time of trial.

23          (Deposition concluded at 3:28 p.m.)

24

25

1          CAUSE NO. 2002-11-4448-D

2   JAMES DAVID GILBERT        )    IN THE DISTRICT COURT
                              )
3                             )
    VS.                       )    CAMERON COUNTY, TEXAS
4                             )
                              )
5   RIG VENTURES INC.; EMILIO )
    SANCHEZ and PHIL WELLS    )    103RD JUDICIAL DISTRICT
6
                   REPORTER'S CERTIFICATION
7               DEPOSITION OF EMILIO SANCHEZ
                     JANUARY 28, 2004
8
        I, Karen Geddes Piland, Certified Shorthand Reporter
9   in and for the State of Texas, hereby certify to the
    following:
10
        That the witness, EMILIO SANCHEZ, was duly sworn by
11  the officer and that the transcript of the oral
    deposition is a true record of the testimony given by
12  the witness;

13      That the deposition transcript was submitted on
    February 13, 2004 to the witness or to the attorney for
14  the witness for examination, signature, and return to me
    by March 5, 2004;
15
        That the amount of time used by each party at the
16  deposition is as follows:

17      Scott D. Webre - 03:40
        Luis R. Hernandez -  00:00
18
        That pursuant to information given to the deposition
19  officer at the time said testimony was taken, the
    following includes counsel for all parties of record:
20
        Scott D. Webre, Attorney for Plaintiff
21          James David Gilbert
        Luis R. Hernandez, Attorney for Defendants
22          Rig Ventures, Inc., Emilio Sanchez,
            and Phil Wells
23
        I further certify that I am neither counsel for,
24  related to, nor employed by any of the parties or
    attorneys in the action in which this proceeding was
25  taken, and further that I am not financially or
    otherwise interested in the outcome of the action.

1    Further certification requirements pursuant to Rule
203 of TRCP will be certified to after they have
2    occurred.

3    Certified to by me this 10th day of February, 2004.

4

5    *Karen Geddes Piland*
6    KAREN GEDDES PILAND, Texas CSR 5627
Expiration Date: 12/31/04
7    A Better Court Reporting Service, Inc.
Firm Registration No. 6
8    P. O. Box 685229
Austin, Texas 78768-5229
9    (512) 478-1989

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A BETTER COURT REPORTING SERVICE, INC.
(512) 478-1989

1    FURTHER CERTIFICATION UNDER RULE 203 T.R.C.P.

2

3    The original deposition was/was not returned to the

4    deposition officer on ___*March 3, 2004*___;

5    If returned, the attached Changes and Signature page

6    contains any changes and the reasons therefor;

7    If returned, the original deposition was delivered

8    to Scott D. Webre, Custodial Attorney;

9    That $___*1,074.55*___ is the deposition officer's

10    charges to Scott D. Webre for preparing the original

11    deposition transcript and any copies of exhibits;

12    That the deposition was delivered in accordance with

13    Rule 203.3, and that a copy of this certificate was

14    served on all parties shown herein on and filed with the

15    Clerk.

16    Certified to by me this __*3rd*__ day *March*____,

17    2004.

18

19

20    *Karen Geddes Piland*
     _____
     Karen Geddes Piland, Texas CSR 5627
21    Expiration Date:    12/31/04
     A Better Court Reporting Service, Inc.
22    Firm Registration No. 6
     P. O. Box 685229
23    Austin, Texas 78768-5229
     (512) 478-1989

24

25

1

CAUSE NO. 2002-11-4448-D

| | | |
|---|---|---|
| JAMES DAVID GILBERT | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| VS. | ) | CAMERON COUNTY, TEXAS |
| | ) | |
| | ) | |
| RIG VENTURES, INC.; EMILIO | ) | |
| SANCHEZ and PHIL WELLS | ) | 103RD JUDICIAL DISTRICT |

## ORAL AND VIDEOTAPED DEPOSITION OF RICHARD JAROSS



JANUARY 28, 2004                    BROWNSVILLE, TEXAS

~~~~~~~~A Better Court Reporting Service, Inc.~~~~~~~~

TRESSA GRANGER, PRESIDENT

Certified Shorthand Reporters

P.O. BOX 685229, AUSTIN, TEXAS 78768-5229

1-800-478-1989, 1-512-478-2968 (FAX)



EXHIBIT NO. B

1        CAUSE NO. 2002-11-4448-D

2  JAMES DAVID GILBERT        )    IN THE DISTRICT COURT
                              )
3                             )
                              )
   VS.                        )    CAMERON COUNTY, TEXAS
4                             )
                              )
5  RIG VENTURES, INC.; EMILIO )
   SANCHEZ and PHIL WELLS     )    103RD JUDICIAL DISTRICT
6
7  ------------------------------------------------------

              ORAL AND VIDEOTAPED DEPOSITION OF
8
                       RICHARD JAROSS
9
                     JANUARY 28, 2004
10 ------------------------------------------------------

11     ORAL DEPOSITION OF RICHARD JAROSS, produced as a

12 witness duly sworn by me at the instance of the

13 Plaintiff James David Gilbert, taken in the above-styled

14 and numbered cause on the 28th day of January 2004, from

15 3:48 p.m. to 5:44 p.m., before Karen Geddes Piland,

16 Certified Shorthand Reporter No. 5627, in and for the

17 State of Texas, at the offices of Fleming & Hernandez,

18 P.C,  1650 Paredes Line Road, Suite 102, Brownsville,

19 Texas, pursuant to the Texas Rules of Civil Procedure

20 (and the provisions stated on the record or attached

21 hereto).

22

23

24

25

1  business and what payments were made to Mystic Shipping

2  from Rig Ventures in connection with the Ocean 66

3  salvage?

4      A.   No.

5      Q.   You don't know if it's 5,000 dollars or 200,000

6  dollars?

7      A.   I don't know.

8      Q.   Do you think it's more than 5,000?

9      A.   Yes.

10      Q.   Do you think it's less than 20?

11      A.   No.  It's more than 20,000.

12      Q.   Do you think it's more than 50?

13      A.   I cannot testify what it is.  I have to check the

14  invoicing and moneys received.

15      Q.   Those invoices aren't contained --

16      A.   No.

17      Q.   -- in your notebook?

18           All of those services were strictly

19  consulting?

20      A.   Yes.

21      Q.   So when we spoke earlier about -- was that

22  pursuant to a written agreement?

23      A.   No.  I don't believe.  I don't believe so.

24      Q.   When we spoke earlier of the fact that you

25  haven't received any moneys for consulting from Rig

```
 1   JAMES DAVID GILBERT          )     IN THE DISTRICT COURT
                                  )
 2                                )
     VS.                          )     CAMERON COUNTY, TEXAS
 3                                )
                                  )
 4   RIG VENTURES INC.; EMILIO    )
     SANCHEZ and PHIL WELLS       )     103RD JUDICIAL DISTRICT
 5
```

REPORTER'S CERTIFICATION
DEPOSITION OF RICHARD JAROSS
JANUARY 28, 2004

     I, Karen Geddes Piland, Certified Shorthand Reporter
in and for the State of Texas, hereby certify to the
following:

     That the witness, RICHARD JAROSS, was duly sworn by
the officer and that the transcript of the oral
deposition is a true record of the testimony given by
the witness;

     That the deposition transcript was submitted on
February 13th 2004 to the witness or to the attorney for
the witness for examination, signature, and return to me
by March 4, 2004;

     That the amount of time used by each party at the
deposition is as follows:

     Scott D. Webre - 01:41
     Luis R. Hernandez -  00:00

     That pursuant to information given to the deposition
officer at the time said testimony was taken, the
following includes counsel for all parties of record:

     Scott D. Webre, Attorney for Plaintiff
          James David Gilbert
     Luis R. Hernandez, Attorney for Defendants
          Rig Ventures, Inc., Emilio Sanchez,
          and Phil Wells

     I further certify that I am neither counsel for,
related to, nor employed by any of the parties or
attorneys in the action in which this proceeding was
taken, and further that I am not financially or
otherwise interested in the outcome of the action.

A BETTER COURT REPORTING SERVICE, INC.
(512)478-1989

1       Further certification requirements pursuant to Rule
2    203 of TRCP will be certified to after they have
     occurred.

3       Certified to by me this 10th day of February, 2004.

4

5                   *Karen Geddes Piland*

6                   KAREN GEDDES PILAND, Texas CSR 5627
                    Expiration Date: 12/31/04
7                   A Better Court Reporting Service, Inc.
                    Firm Registration No. 6
8                   P. O. Box 685229
                    Austin, Texas 78768-5229
9                   (512) 478-1989

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FURTHER CERTIFICATION UNDER RULE 203 T.R.C.P.

1
2
3   The original deposition (was) was not returned to the
4 deposition officer on ___3/16/04_____;
5   If returned, the attached Changes and Signature page
6 contains any changes and the reasons therefor;
7   If returned, the original deposition was delivered
8 to Scott D. Webre, Custodial Attorney;
9   That $____492.35____ is the deposition officer's
10 charges to Scott D. Webre for preparing the original
11 deposition transcript and any copies of exhibits;
12   That the deposition was delivered in accordance with
13 Rule 203.3, and that a copy of this certificate was
14 served on all parties shown herein on and filed with the
15 Clerk.
16   Certified to by me this __15th__ day __March_____,
17 2004.
18
19
20 _Karen Geddes Piland_
Karen Geddes Piland, Texas CSR 5627
21 Expiration Date: 12/31/04
A Better Court Reporting Service, Inc.
22 Firm Registration No. 6
P. O. Box 685229
23 Austin, Texas 78768-5229
(512) 478-1989
24
25