UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 7 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JAMES DAVID GILBERT | * | |
| | * | |
| | * | |
| | * | CIVIL ACTION NO. B04-CV-047 |
| VERSUS | * | |
| | * | |
| | * | JUDGE HILDA G. TAGLE |
| RIG VENTURES, INC. et al | | |

PLAINTIFF'S MEMORANDUM AND EVIDENCE IN OPPOSITION TO RICHARD
JAROSS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE HILDA G. TAGLE:

COMES NOW JAMES DAVID GILBERT, hereinafter sometimes referred to as "Plaintiff,"
and files this, his Plaintiff's Memorandum and Evidence in Opposition to Defendant Richard
Jaross' Motion for Summary Judgment, and in support hereof, would respectfully show:

### Nature of the Case

This is a personal injury action brought under the General Maritime Law and state law for
injuries suffered by Plaintiff while an employee of Rig Ventures, Inc. and during the course and
scope of that employment performing salvage operations aboard a jack-up rig, Ocean 66.
Defendant has stated that Mr. Gilbert suffered a broken ankle, which drastically understates the
nature of Mr. Gilbert's injuries. Mr. Gilbert suffered a severe compound comminuted fracture of
the right tibia/fibula, very large medial soft tissue defect, compression fractures of vertebrae, loss
of consciousness for approximately 5 minutes, and closed head injury. Mr. Gilbert underwent
two surgeries and a month long hospitalization, resulting in excess of $166,000 of medical bills.

Plaintiff has attached as EXHIBIT 13 photographs of Mr. Gilbert's leg taken many months following the incident.

## I.    PLAINTIFF'S EXHIBITS

Plaintiff offers the following exhibits in opposition to summary judgment, and requests same be admitted into evidence and considered for all purposes:

EXHIBIT A:  Affidavit of Scott Webre
EXHIBIT 1:  Deposition of Emilio Sanchez
EXHIBIT 2:  2/19/01 memo with handwritten notations by both Richard Jaross and Emilio Sanchez. (This document was attached as an exhibit to Emilio Sanchez' deposition and is authentic by virtue of stipulation of counsel. (EXHIBIT 1, p. 33, ll. 3-12)
EXHIBIT 3:  Deposition of Richard Jaross
EXHIBIT 4:  Plan for Removal and Scrap Proposal
EXHIBIT 5:  Rig Ventures, Inc.'s Response to Plaintiff's Third Request for Admission
EXHIBIT 6:  Vessel Custodial Agreement and Scrap Proposal
EXHIBIT 7:  Various correspondence by Richard Jaross on Rig Ventures, Inc.'s letterhead.
EXHIBIT 8:  6/3/02 Louise Max correspondence on behalf of Rig Ventures to Greg Thory.
EXHIBIT 9:  2/7/02 Richard Jaross correspondence to Emilio Sanchez, AND 3/7/02 fax from Richard Jaross to Emilio Sanchez.
EXHIBIT 10:  9/6/00 Richard Jaross correspondence to Jerry McCallum.
EXHIBIT 11:  7/7/01 Richard Jaross correspondence to Jim Walker attaching itemized list of equipment and tools aboard Ocean 66.
EXHIBIT 12:  Photograph of James Gilbert's injury.
EXHIBIT 13:  Counsel correspondence

## II.    Statement of the Issues to be Ruled Upon by the Court

Whether genuine issues of material fact exist regarding the requisite elements of Plaintiff's causes of action versus Richard Jaross on theories of (1) Agency, and (2) Joint Venture/Joint Enterprise.

## III.    Summary of the Argument

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 2

Plaintiff requests the Court DENY Defendant Richard Jaross' Motion for Summary Judgment for the following reasons:

(1)     <u>Agency</u>:  Defendant's motion misconstrues the doctrine of Agency.  Plaintiff's allegation that Richard Jaross is the agent of Rig Ventures, Inc. is an allegation that, if proven, will support vicarious liability *of the principal, Rig Ventures, Inc.*  Whether Richard Jaross is the agent of Rig Ventures, Inc. is *not* relevant for the determination of Richard Jaross' liability to plaintiff.  The causes of action against Mr. Jaross are not based upon any allegation that he is or was the agent of Rig Ventures, Inc..

(2)     <u>Joint Venture/Joint Enterprise</u>:  Defendant Richard Jaross' averment that he "was to receive a fixed fee and he was not to share in the profits or losses [out of the salvage of Ocean 66]" (Defendant Jaross' Motion for Summary Judgment, ¶ 3) is a blatant misstatement of the evidence.  Instead, the evidence is clear that Defendant Emilio Sanchez, as President of Rig Ventures, Inc., would determine in his sole discretion the amount of any fee to be paid Richard Jaross, and such amount "wasn't a specific amount or agreed amount…" and was only paid when and if there was a profit enjoyed by Rig Ventures. (See, EXHIBIT 1, Emilio Sanchez deposition, p. 30, l. 20 thru p. 32, l. 4).    Defendant Jaross has misrepresented the evidence to the Court.

Moreover, Defendant Jaross' motion does not address plaintiff's allegations that Richard Jaross was negligent and grossly negligent and that such negligence was a proximate cause of plaintiff's injuries (Plaintiff's Fifth Amended Petition, ¶¶ 40-43).  Such actions are independent causes of action, completely distinct from cause of action against Mr. Jaross based upon joint enterprise, thus Defendant Jaross' liability for negligence and punitive damages is not presently before the Court.

### IV.     Statement of Material Facts

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 3

1.      Defendant Emilio Sanchez, as President of Rig Ventures, Inc., would determine in his sole discretion the amount of any fee to be paid Richard Jaross, and such amount "wasn't a specific amount or agreed amount…" and was only paid when and if there was a profit enjoyed by Rig Ventures. (See, EXHIBIT 1, Emilio Sanchez deposition, p. 30, l. 20 thru p. 32, l. 4). If Rig Ventures didn't enjoy a profit, Mr. Jaross would be paid no fee. (Id. p. 52, ll. 1-5; see also, p. 148, ll. 7-19). Rig Ventures, Inc. and Richard Jaross have not entered into any written contract. (Id. p. 163, ll. 1-4). Mr. Jaross testified inconsistently on this issue. Mr. Jaross testified that he "believed" there was a specific fee agreed to, but could not recall (EXHIBIT 3, p. 19, ll.  12-22), but then indicated the fee was in relation to the profit of the job (Id. p. 20, l. 25 thru p. 21, l. 4); and yet could not recall whether the agreement was for some percentage of the net profit on the project (Id. p. 21, ll. 9-13). Mr. Jaross finally agreed his "fee only comes if and when the project becomes profitable. (Id. p. 46, ll. 23-25). Still, Mr. Jaross received funds from Rig Ventures, Inc. on the Ocean 66 project (Id. p. 47, ll. 16 – 25), thus the nature of the agreement is unclear.

2.      Emilio Sanchez and Rig Ventures, Inc. relied upon Richard Jaross for compliance with applicable OSHA and/or Coast Guard regulations,  (EXHIBIT 3, p. 55, l. 3-6)(EXHIBIT 1, p. 65, l. 9 thru p. 67, l.5); for handling "the technical end of the operation," (Id., p. 30, ll 6-9); in selecting personnel to perform labor aboard Ocean 66, (Id.  p. 28, ll.1-3), but subject to Mr. Sanchez's approval (EXHIBIT 1, p. 140 ll. 1-21); in determining skill levels of persons hired (Id. p. 40, l. 25 thru p. 41, l.13); for procuring liability insurance (though no insurance for bodily injury at the time of the incident giving rise to this suit)(Id. p. 71, ll. 15-18; p. 121, ll. 16-20); for all operational oversight *pursuant to direction and authority from Emilio Sanchez* as President of Rig Ventures, Inc. (Id., p. 51, ll. 16-25).

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 4

3.      Mr. Jaross would also make the about 90% of the contacts with prospective sellers of vessels on behalf of Rig Ventures, Inc., and at the direction and authority of Emilio Sanchez was "authorized to act as [Emilio Sanchez's] agent or the agent of Rig Ventures." (Id. p. 47, l. 11 thru p. 48, l. 3).

4.      Mr. Jaross directed the operational aspects of the Ocean 66 project, while Emilio Sanchez directed the financial transactions, and thus each had a say in the direction of Rig Ventures, Inc. in the Ocean 66 project. (Id. p. 64, l. 24 thru p. 65, l. 7)

5.      Mr. Jaross signed a "Vessel Custodial Agreement" as Vice-President of Rig Ventures, Inc. (EXHIBIT 6), and routinely corresponded with third parties on Rig Ventures, Inc.'s letterhead, sometimes purportedly as "consultant," other times without any such description. (EXHIBIT 7)

6.      Many months before the incident in question, Richard Jaross wrote to Emilio Sanchez, inquiring into whether Mr. Sanchez desired to hire a reputable entity to perform certain tasks aboard Ocean 66, or "go by the seat of our pants." Mr. Sanchez replied "Seat of pants first, Noble if we fail." See EXHIBIT 2.   This document is relevant to show Defendant Sanchez and Defendant Jaross jointly contemplated a "seat of the pants" operation regarding salvage of Ocean 66 from the outset, but more importantly, that Emilio Sanchez exercised ultimate control over the Ocean 66 operation – Defendant Jaross sought advice/approval of a perceived course of action, and Defendant Sanchez made the decision that the Ocean 66 would be a seat of the pants operation.

7.      Richard Jaross and Emilio Sanchez are 50/50 owners of Dominion Shipping, Inc., which provided consulting services to Rig Ventures, Inc. on the Ocean 66 project. (EXHIBIT 1, p. 19, ll. 10-25).      In addition to being half owner, Mr. Jaross was also a consultant to Dominion

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 5

Shipping, Inc. (EXHIBIT 1, p. 20, l. 1 thru p. 21, l. 1). When Rig Ventures would make a payment to Mr. Jaross for his services, such was based upon work performed as consultant for both Rig Ventures, Inc. and Dominion Shipping, Inc. (EXHIBIT 1, p. 88, l. 13 thru p. 90, l. 4).

8.    Rig Ventures, Inc. employed and paid a salary to Richard Jaross' secretary, who resided and worked in North Carolina. (EXHIBIT 1, p. 82, ll. 13 – 17). Rig Ventures, Inc. does not maintain a North Carolina office. (Id., p. 150, ll. 14-16).    Still, Mr. Jaross' secretary, Louise Max corresponded with third parties as Rig Ventures, Inc.'s secretary "per instructions of Richard Jaross and Emilio Sanchez (EXHIBIT 8). Mr. Sanchez testified elsewhere that the only employees of Rig Ventures were his daughter, Norma Garza, and Emilio Sanchez, Jr. (Id, at p. 24, ll. 12 –25), and note also that Rig Ventures, Inc. has recently admitted it employed Phil Wells and James Gilbert. (EXHIBIT 5) This raises serious credibility issues regarding Mr. Sanchez, generally, and specifically to the manner in which it classifies its labor, including "consultants."

9.    Mr. Jaross was not issued a 1099 for any fees paid by Rig Ventures, Inc. (EXHIBIT 1, p. 74, ll. 22-25).

10.    Rig Ventures, Inc. paid Mystic Shipping, Inc., a company owned by Mr. Jaross, for expenses incurred by it and/or for services performed by Mr. Jaross related to Ocean 66. (EXHIBIT 1, p. 59, l. 1 thru p. 59, l. 20; p. 60, ll. 17-20).    Sometimes Rig Ventures would instead wire money to Mr. Jaross' wife's account. (Id., p. 86, l. 13-16).

11.    Emilio Sanchez possessed no special expertise in the oilfield, generally, and no expertise in ship salvage. (EXHIBIT 1, p. 8). Consequently, Mr. Sanchez hired Richard Jaross to oversee all issue regarding safety protocol aboard Ocean 66, even though Richard Jaross has no licenses or certifications pertaining to workplace safety, to ship-breaking, or to the oilfield industry. (EXHIBIT 3, p. 9, l. 22 thru p. 10, l. 14)

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 6

12.    Richard Jaross was unaware if Rig Ventures, Inc. employed any type of safety and health plan similar to what he testified was utilized by Esco Marine, Inc., a corporation of which he is now president and which Emilio Sanchez formerly owned before selling to Richard Jaross' wife. (EXHIBIT 3, p. 21, l. 18 thru p. 22, l. 10).   And this notwithstanding that when Rig Ventures, Inc. submitted its "Plan for Removal" of Ocean 66 to Murphy Oil, the plan included: "Safety overview of both rig and personnel....(3) safety programs." (EXHIBIT 4).

13.    And in fact, Rig Ventures, Inc. maintained no policies or procedures designed to address safety in the workplace.   (See, Defendant Rig Ventures, Inc.'s Response to Plaintiff's First Request for Production, No. 11, EXHIBIT 9; see also, EXHIBIT 5, p. 43, l. 15 thru p. 44, l.12; EXHIBIT 6, p. 31, l. 2-5).

14.    Mr. Jaross corresponded with Emilio Sanchez regarding substantive matters pertaining to Ocean 66 (EXHIBIT 9), repeatedly referencing "we", i.e. Richard Jaross and Emilio Sanchez, as follows:

   a.    "The cost would be as follows:  1.  $10,000 up-front fee which would need to be wired as per their letter.  This would be completely refundable if _we_ did not like the commitment...."

   b.    "Let's assume the rigs appraise for the greater than $4 Mil and _we_ received a $2 Mil loan..."

   c.    "First of all, if _we_ sell one or both rigs in the first year...  If _we_ do not sell one or more of the rigs, then I think _we_ could just give the rigs to the lender and at least _we_ would walk off with $1.5 Mil.  This would allow _us_ to pay off the Tidewater claim and other bills.

   d.    "If _we_ do not answer this man in a timely fashion, he will completely drop it...

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 7

Mr. Jaross then asks for Mr. Sanchez' direction, "Please advise what you want to do."

See also Mr. Jaross' correspondence to Young Hydraulics (EXHIBIT 9), wherein he indicated, "...I can tell you quite frankly that Emilio Sanchez and I are not going to pay $25/hr to your men while they were sleeping." Again, this suggests Richard Jaross, at least, considered the Ocean 66 project a joint project consisting of Mr. Sanchez and himself.

Mr. Jaross repeated the "we" reference in correspondence to Emilio Sanchez, in which he made handwritten notations on the letter of representation received from prior counsel in this matter. (EXHIBIT 9). Mr. Jaross expressed obvious concern regarding having to pay Mr. Gilbert's liability claim, and incidentally, this document also establishes Mr. Jaross' and Mr. Sanchez' calculated scheme to render Rig Ventures, Inc. judgment-proof, so to speak. Mr. Jaross indicated, "Bad News!! We need to either make sure we have lien (??) on rig or sell rig – RJ!!"

Note also that Mr. Jaross corresponded with Emilio Sanchez on 5/31/01 regarding numerous substantive matters related to Mr. Jaross' salvage-related tasks, including welding, hydraulics, USCG inspection, anchoring, towing, etc., concluding the correspondence, "Please let me have your comments on the above." (EXHIBIT 9)

15.    The seller of Ocean 66 required that Rig Ventures, Inc. provide a "Plan of Removal" (EXHIBIT 4). By correspondence dated September 6, 2000 to a third party, Richard Jaross asked the eventual author of the plan to send the draft of the plan to him, indicating "Emilio and I would like to review the plan first." (EXHIBIT 10). At a minimum, this implies Mr. Sanchez's involvement in the decision making process regarding what would be accomplished and how, i.e. right of control.

16.    Rig Ventures, Inc. provided the majority of tools necessary to accomplish the salvage operations aboard Ocean 66. (EXHIBIT 1, p. 73, ll. 6-17; See also, EXHBIT 11)

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 8

## V.    ARGUMENT AND AUTHORITY

The law regarding summary judgment standards is well established.  The non-movant bears the burden of establishing the requisite elements of the challenged action by competent summary judgment evidence raising a genuine issue of material fact.  *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995).  The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion.  *Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990).   Factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.* 66 F.3d 89, 92 (5th Cir), revised on other grounds upon denial of reh'g, 70 F.3d 26 (5th Cir. 1995).

Defendant's motion for summary judgment should be denied in its entirety because on record facts stated above genuine issue of act exists regarding the requisite elements of plaintiff's causes of action based upon agency and joint venture/joint enterprise.   Moreover, defendant movant Richard Jaross's challenge to Plaintiff's allegations of agency are misplaced, as Plaintiff seeks to establish the vicarious liability of Rig Ventures (the principal), *not* movant Richard Jaross (the agent), by allegations that Richard Jaross is the agent of Rig Ventures, Inc.   Richard Jaross is without standing to challenge plaintiff's allegation of agency in this regard.

### 1. AGENCY

The law regarding agency is well established.    Under Texas law, agency is a mixed question of law and fact. *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1295 (5th Cir. 1994). "Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control." *Id.* at 1296.  To prove an agency relationship under Texas law, there must be evidence from

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 9

which the court could conclude that the alleged principal had the *right to control* both the means and the details of the process by which the alleged agent was to accomplish the task. *Id.* at 1296. The key is the *right* to control. Agency can be implied from the conduct of the parties under the circumstances. *Grace Community Church v. Gonzales*, 853 S.W.2d 678, 680 (Tex.Ct.App. – Houston [14th Dist.] 1993).

Notwithstanding that Movant Jaross is without standing to challenge Plaintiff's allegations of agency, summary judgment on this cause of action, even if brought by Rig Ventures, Inc., is inappropriate because record evidence clearly indicates an agreement between these parties that Mr. Jaross would act on behalf of Rig Ventures, Inc., and that Mr. Jaross was subject to Mr. Sanchez's right to control the means and details of the work to be accomplished.

Mr. Sanchez determined, not Mr. Jaross, that instead of using a qualified operator to perform certain necessary activities in the Ocean 66 salvage, they would use their own people and go "by the seat of [their] pants." (EXHIBIT 2). The memo on which this notation was made pertains to the manner in which certain tasks aboard Ocean 66 would be accomplished, and by whom. There is no question that this demonstrates Emilio Sanchez retained the right of control both the means and details of Mr. Jaross' work, but in fact did control, the means, if not the details, of the work to be performed.

Emilio Sanchez and Rig Ventures, Inc. relied upon Richard Jaross for compliance with applicable OSHA and/or Coast Guard regulations, (EXHIBIT 3, p. 55, l. 3-6)(EXHIBIT 1, p. 65, l. 9 thru p. 67, l.5); for handling "the technical end of the operation," (Id., p. 30, ll 6-9); in selecting personnel to perform labor aboard Ocean 66, (Id. p. 28, ll.1-3), but *subject to Mr. Sanchez's approval* (Id., p. 140 ll. 1-21); in determining skill levels of persons hired (Id. p. 40, l. 25 thru p. 41, l.13); for procuring liability insurance (though no insurance for bodily injury at the

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 10

time of the incident giving rise to this suit)(Id. p. 71, ll. 15-18; p. 121, ll. 16-20); for all operational oversight *pursuant to direction and authority from Emilio Sanchez* as President of Rig Ventures, Inc. (Id., p. 51, ll. 16-25). Mr. Jaross would also make the about 90% of the contacts with prospective sellers of vessels on behalf of Rig Ventures, Inc. *at the direction and authority of Emilio Sanchez* was "*authorized to act as [Emilio Sanchez's] agent or the agent of Rig Ventures*." (Id. p. 47, l. 11 thru p. 48, l. 3). These facts create genuine issue of material fact regarding Mr. Jaross' designation as agent of Rig Ventures, Inc. and Mr. Sanchez's "*right* to control" the means and details of Mr. Jaross' activities. Clearly, the selection of personnel was one of Mr. Jaross' more important tasks, and just as clearly, Mr. Sanchez *retained the right* to override Mr. Jaross' decisions in this regard. (Id., p. 140 ll. 1-21). Further, Mr. Sanchez' referenced testimony from page 47 of his deposition may constitute an admission that Mr. Jaross was Rig Ventures' agent, though same is not proffered as dispositive of the issue.

Mr. Jaross signed a "Vessel Custodial Agreement" as Vice-President of Rig Ventures, Inc., as well as bid proposals for scrap of certain items aboard Ocean 66 (EXHIBIT 6), and routinely corresponded with third parties on Rig Ventures, Inc.'s letterhead, sometimes purportedly as "consultant," other times without any such designation. (EXHIBIT 7). These facts demonstrate Rig Ventures, Inc. authorized Richard Jaross to act on its behalf.

Mr. Jaross would make the about 90% of the contacts with prospective sellers of vessels on behalf of Rig Ventures, Inc., and at the direction and authority of Emilio Sanchez was "authorized to act as [Emilio Sanchez's] agent or the agent of Rig Ventures." (EXHIBIT 1. p. 47, l. 11 thru p. 48, l. 3). Mr. Sanchez testified:

> Q. Mr. Jaross? Would he handle all of [the contacts with perspective sellers of vessels]"
> A. Most of it, yeah, or 90 – 90 percent of the time he would do that.

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 11

Q.   Okay, he would handle that *at your direction*."
A.   That is correct.
Q.   With your authority?
A.   That's correct.
(Id., emphasis added)

This demonstrates Rig Ventures gave Mr. Jaross authority to act on its behalf, but at the direction, i.e. control, of Mr. Sanchez.

The notion that Mr. Sanchez did not have the right to control Mr. Jaross in his assignments regarding Ocean 66 is simply ludicrous. As referenced above regarding Mr. Jaross' numerous "we" references, it is clear that Mr. Jaross sought guidance and decisions from Mr. Sanchez when carrying out his assigned tasks, as evident from EXHIBIT 9 in which Mr. Jaross requests of Mr. Sanchez, "Please advise what you want to do," and "Please let me have your comments …"   The only plausible reason Mr. Jaross made such inquiries of Mr. Sanchez is that Mr. Sanchez had the right to control the work, whether he did so or not. And even still, there is evidence Mr. Sanchez exercise control in the area of responsibility charged to Mr. Jaross. One representative piece of evidence in this regard is attached as EXHIBIT 9, which shows that Mr. Sanchez solicited third parties to provide dockage services regarding Ocean 66, a matter clearly within the scope of Mr. Jaross' assigned tasks.

Without reiterating all facts stated hereinabove in Section IV and evidenced by the competent summary judgment evidence attached hereto, Plaintiff avers there is genuine issue of material fact whether Mr. Sanchez had the right to control the means and details of the work performed by Mr. Jaross, whether he always exercised that right or not. The evidenced attached hereto clearly indicated that Mr. Jaross, while he certainly operated without Mr. Sanchez' *actual* control over the means and details of his work *at times*, Mr. Jaross was clearly subject to Mr.

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 12

Sanchez's *right* of control at all times, and was subject to Mr. Sanchez' actual control at other times, as shown by EXHIBIT 9.

Summary judgment evidence does not support Defendant Jaross' contention that he is an independent contractor.   In this regard, it should be noted that insofar as Defendant Jaross is alleging independent contractor status as a means of avoiding liability, such might be considered an affirmative defense, even though same is not listed as such in FRCP 8(c).  If such is an affirmative defense, then Defendant bears the burden of proof on this issue. *Crescent Towing & Salvage Co. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994)(affirmative defense of judicial sale).  It is not plaintiff's burden to disprove this allegation.  Therefore, Defendant Jaross must provide competent summary judgment evidence showing no genuine issue of material fact as to the requisite elements for independent contractor status in order to prevail on this issue at the summary judgment stage.  Defendant has not met his burden in this regard.

The determination of independent contractor status involves the analysis of several factors.  Those factors include: (1) the independent nature of the business; (2) the obligation to furnish necessary tools, supplies and materials to perform the job; (3) the right to control the progress of the work; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job, and whether contingent on the outcome of the project. *Walker v. Mersserschmitt Bolkow Blohm*, 844 F.2d 237 (5th Cir. 1998).   Genuine issue of fact exists regarding these factors as applied in the instant case.

Without reiterating the citations to the record provided above, Plaintiff would show Mr. Jaross was *not independent in the performance of tasks* regarding Ocean 66, as reflected by Mr. Jaross' correspondence to Mr. Sanchez requesting guidance, and also in Mr. Sanchez's retention of right to control selection of employees.   Mr. Jaross clearly had *no obligation to furnish the*

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 13

*necessary tools, supplies, and materials* to perform the job, as evidenced by EXHIBIT 11, showing no tools owned by Mr. Jaross, as well as the fact that, although Mr. Jaross ordered supplies, he did not pay for them. (EXHIBIT 1, p. 156, ll. 7-13). *Mr. Sanchez retained right of control* over Mr. Jaross, as adequately addressed above. Mr. Jaross was *not employed for any specific period of time* or for simply one job, contrasted to a "fixed term contract at the end of which either party could terminate." *Walker*, at 243. And indeed, the record indicates Mr. Sanchez and Mr. Jaross' relationship is one of many years spanning many projects and companies, and that Mr. Jaross has been employed supposedly as a consultant since Rig Ventures, Inc. was formed. (EXHIBIT 1, pp. 28-30). With regard to the method of payment, that too has been discussed at length above and will not be belabored here except to contrast Mr. Jaross' *payment contingent on the profitability of the venture* to that in *Walker*, in which the court stated, "Significantly, Lone Star's payments were not dependent on the success of North Central's business." *Id.* at 243. Plaintiff avers that genuine issue of fact exists to each of the *Walker* factors, but note still that insofar as Defendant has alleged independent contractor status, he bears the burden of proving independent contractor status. Defendant would thus have to provide competent summary judgment proof that no genuine issue of fact exists on the totality test set forth by *Walker* and its five factors. Defendant has not met this burden.

## JOINT ENTERPRISE/ JOINT VENTURE

The law regarding joint enterprise is also well established. The negligence of one member of a joint enterprise is vicariously imposed on the other members of the enterprise, and the contributory negligence of one member of a joint enterprise is similarly imputed to the other members of the enterprise. *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14-15 (Tex. 1974). A joint enterprise exists if all of the following elements are present: (1) an agreement, express or

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 14

implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 530-31 (Tex. 2002); *Shoemaker*, 513 S.W.2d at 14; *Walker v. Mersserschmitt Bolkow Blohm*, 844 F.2d 237 (5th Cir. 1998). The equal right of control element has been articulated to mean that each must have an authoritative voice or must have some voice to be heard. *Shoemaker*, 513 S.W.2d at 15, 16; citing *Nelson v. Fulkerson*, 286 S.W.2d 129 (Tex. 1956). "Whether these elements exist is frequently a question for the jury, under proper direction from the court." *Shoemaker*, at 17.

Genuine issue of fact exists regarding the requisite elements of joint enterprise. First, there is no question Mr. Sanchez, on behalf of Rig Ventures, Inc. had an agreement with Mr. Jaross to coordinate salvage operations pertaining to Ocean 66. Second, there is no question that both Rig Ventures, Inc. and Richard Jaross had a common purpose – to salvage Ocean 66. These first two are supported by abundant, if not redundant, evidence above. Likewise, there is, at a minimum, a genuine issue of fact that Rig Ventures, Inc. and Richard Jaross had a community of pecuniary interest in the salvage of Ocean 66, as represented by the testimony of both Emilio Sanchez and Richard Jaross that Mr. Jaross' fees were contingent on the success of the venture. The only legitimate question regarding the existence of joint enterprise in this instant is the fourth element – whether Rig Ventures, Inc. and Richard Jaross had an equal right to a voice, or per *Shoemaker*, "some voice" in the direction of the enterprise.

If *Shoemaker* and "some voice" is good law, there is no question that genuine issue of fact exists as to whether Richard Jaross had "some voice" in the direction of the enterprise. This is evident by Mr. Sanchez's testimony that Mr. Jaross handled the technical end of the operation

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 15

(EXHIBIT 1, p. 30, ll 6-9); selected personnel to perform labor aboard Ocean 66, (Id. p. 28, ll.1-3), even though subject to Mr. Sanchez's approval (Id., p. 140 ll. 1-21); determined skill levels of persons hired (Id. p. 40, l. 25 thru p. 41, l.13); procured liability insurance; (Id. p. 71, ll. 15-18; p. 121, ll. 16-20); conducted all operational oversight pursuant to direction and authority from Emilio Sanchez as President of Rig Ventures, Inc. (Id., p. 51, ll. 16-25); and arranged for salvaged items of Ocean 66 through an agent (Id, p. 140, ll. 22-25). If, on the other hand, *Shoemaker* and its progeny require an absolutely equal voice in the direction of the enterprise, the issue is not nearly so clear because it would appear that "the buck stopped with Emilio Sanchez." In this regard, Defendant alleges the mutual exclusivity of the application of the doctrine of Agency and the doctrine of Joint Enterprise because, if Mr. Jaross was subject to the control of Mr. Sanchez then Mr. Jaross did not have an equal voice. To the extent that is true, plaintiff would simply say that his allegations or agency and joint enterprise are alternative pleadings, though not specificially designated as such. Moreover, Plaintiff concedes there is logic to defendant's contention of mutual exclusivity *if* the Court determines that an absolutely equal voice, rather than simply "some voice" as discussed in *Shoemaker*, is required. And ultimately, even though Plaintiff would concede the evidence suggests Mr. Sanchez retained ultimate control over the enterprise, whether he did or not is largely a fact question for the jury, and if the jury determines instead that Mr. Jaross and Mr. Sanchez retained equal authority, then the application of Joint Enterprise would be appropriate. Therefore, summary judgment on this issue is not apprpriate.

## VI.   CONCLUSION

Defendant's motion should be denied because genuine issue of fact exists pertaining the direction and authority of Richard Jaross, and to the right of control maintained by Rig Ventures,

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 16

Inc.   The evidence tends to indicate that Richard Jaross was <u>not</u> an independent contractor because he was <u>not</u> responsible for supplying tools, materials, and supplies; because he was <u>not</u> free to perform his tasks without control by Rig Ventures, even though he had some voice and some discretion in the performance of his tasks; because his pay was conditioned on the profitability of the venture; and because the nature of the relationship between Mr. Jaross and Rig Ventures, Inc. was a longstanding one "from the inception" of Rig Ventures and not subject to a certain term or project.

Summary judgment is likewise inappropriate as to joint enterprise because the crux of the issue in this case turns upon the fact issue of whether Mr. Jaross and Mr. Sanchez retained equal control, or instead as admittedly the evidence tends to indicate, that Mr. Sanchez retained ultimate control.

Defendant's motion does not address plaintiff's allegations of negligence and gross negligence, thus those causes of action against Mr. Jaross are not presently before the Court.

### VII.   MOTION FOR SANCTIONS

Defendant Jaross' legal position regarding the mutual exclusivity of Agency and Joint Enterprise, and the application of Joint Enterprise, may be warranted, as discussed above. Movant's factual allegations, however, are blatant misstatements of the record herein occasioned either because of ignorance or a calculated effort to deceive the Court and counsel.  Either way, the motion is sanctionable pursuant to FRCP 11.  Plaintiff seeks monetary sanctions in an amount commensurate with reasonable attorney fees herein.  The undersigned counsel, Scott Webre, has spent 21 hours in responding to the instant motion and seeks attorney fees at the reasonable rate of $175 per hour.  (See EXHIBIT A).

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 17

The standard for deciding whether sanctionable conduct has occurred is objective: Did the attorney make a reasonable inquiry of the facts and law before signing and presenting the offending document?  FRCP 11(b); *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 538 (5th Cir. 1990).  To decide whether the inquiry was reasonable, the Court looks to the circumstances and facts available to the attorney or party at the time the document was filed.  *Townsend v. Holman Consulting Corp.* 929 F.2d 1358, 1365 (9th Cir. 1990).  Plaintiff avers sanctions are warranted for the following reasons.

1.    Defendant Jaross alleges: "The owner contracted with Movant to procure a crew and the necessary tools and supplies to remove the vessels and valves.  For this service and other ongoing services, Movant was paid a specific fee regardless of whether the owner derived a profit or loss from the operation in which Plaintiff was injured."  (Jaross Brief in Support of Motion for Summary Judgment, p. 2, "Statement of Facts", ¶ 2).  As indicated above, that statement is false.  For sake of brevity, Plaintiff refers the Court to Section IV(1), above, for evidence flatly disproving Mr. Jaross' assertions.

2.    Defendant Jaross alleges: "Movant contracted with Rig Ventures, Inc. to perform a certain task aboard MODU "Ocean 66" according to his own method and without being subject to the control of Rig Ventures, Inc. except as to the result of his work."  (Jaross Motion for Summary Judgment, ¶ 3).  Defendant Jaross also alleges: "The owner was not to control the Movant except as to the result of the particular project."  (Jaross Brief in Support of Motion for Summary Judgment, p. 2, "Statement of Facts," ¶ 2).  There is absolutely no evidence to indicate that Rig Ventures was not to control Mr. Jaross, and the Court will surely note that Mr. Jaross had cited no direct evidence in support of this non-existent fact.  Plaintiff has offered numerous citations from both Mr. Sanchez's and Mr. Jaross' depositions indicating Mr. Jaross' fee was

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 18

contingent upon the Ocean 66 project's ultimate profitability, notwithstanding the apparent fact that Mr. Jaross or his company received advances. For sake of brevity, Plaintiff refers the Court to Section VI(A), above, for evidence disproving Mr. Jaross' assertions.

And perhaps worse than simply making unfounded allegations, Defendant has omitted, whether by oversight or intentionally, the portions of the record that contradict its position. Defendant has failed to offer for the Court's consideration pages 31, 32, 52, and 148 of Mr. Sanchez's deposition, and pages 20, 21, and 46, each referenced hereinabove in Section IV(1). These omitted pages clearly and unequivocally indicate Mr. Jaross' fee hinged on the profitability of the venture, and counsel's failure to bring that to the Court's attention is inexcusable.

Plaintiff's counsel offered Defendant's counsel an opportunity to withdraw or modify the motion for summary judgment, but the offer was rebuffed. (EXHIBIT 13).

The court will recall this isn't the first time the same counsel for defendant has filed spurious pleadings. Defendant Rig Ventures, Inc., through the same counsel, filed a motion to abate proceedings in an attempt to convert the tort proceedings into an administrative proceeding before the U.S. Department of Labor. After denying throughout the course of litigation that it employed Plaintiff, Rig Ventures, Inc. through its counsel reversed its position and claimed it employed Plaintiff when it thought it could escape the jurisdiction of this Court by doing so. The Court rejected that effort. It is also noteworthy that the instant issue, whether Richard Jaross is agent or independent contractor of Rig Ventures, Inc., is similar to the issue that Rig Ventures, Inc. previously reversed itself on, that is, whether James Gilbert was employee or independent contractor of Rig Ventures, Inc.

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 19

Defendant's cavalier and haphazard filing of the instant motion is an abuse of the federal rules, and quite frankly, a waste of the Court and counsel's time.  Plaintiff respectfully requests the Court put a stop to it by granting sanctions in an amount deemed appropriate in the Court's wide discretion.

## PRAYER

Wherefore, premises considered, plaintiff requests Defendant Richard Jaross' Motion for Summary Judgment be denied, Defendant Jaross and/or his counsel be sanctioned for frivolous factual pleadings, and for such other and further relief to which Plaintiff may be entitled.

Date:   September 27, 2004                    Respectfully submitted,


Scott Webre
Attorney-in-Charge
Texas State Bar Number 21050070
Southern District Number 20150070
556 Jefferson Street
Jefferson Towers, Suite 200
Lafayette, Louisiana 70501
(337) 593-4178
(337) 593-4159 (fax)

Frank Costilla
Texas State Bar Number 04856500
Southern District Number 04856500
The Law Office of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 544-3152 (fax)

Ryan Krebs, M.D., J.D.
Texas State Bar Number 00792088
Southern District Number 00792088
6601 Vaught Ranch Road, Suite 100
Austin, Texas 78730
(512) 478-2072
(512) 494-0420 (fax)

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 20

By: _____
        FRANK COSTILLA

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing document was served on counsel for all parties that have appeared, as indicated below, on this _27th_ day of September, 2004:

Mr. Tom Fleming                  *Via CMRRR*
Mr. Luis R. Hernandez
Fleming & Hernandez, P.C.
1650 Paredes Line Road, Suite 102
Brownsville, TX 78521

_____
FRANK COSTILLA

*Gilbert vs. Rig Ventures, Inc. et al.*
*Plaintiff's Memorandum and Exhibits in Opposition to Richard Jaross' Motion for Summary Judgment*
Page 21