UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT - 4 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JAMES DAVID GILBERT | * |
| | * |
| | * |
| | * CIVIL ACTION NO. B04-CV-047 |
| VERSUS | * |
| | * |
| | * JUDGE HILDA G. TAGLE |
| RIG VENTURES, INC. et al | * |

## **PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLEADINGS**

TO THE HONORABLE HILDA G. TAGLE:

Comes now, Plaintiff James David Gilbert, through undersigned counsel, and files this Plaintiff's Motion for Leave to Amend Pleadings pursuant to Fed.R.Civ.P. 15(a), and in support hereof would respectfully show as follows:

### **Background and Summary of Motion**

1.    Plaintiff have previously amended pleadings after removal to federal court, once on agreement of defendants and approval of the Court (Plaintiff's Fourth Amended Petition), and again to join additional defendants pursuant to the deadline established by the Court (Plaintiff's Fifth Amended Petition);

2.    Plaintiff has sought agreement of counsel for the proposed amendment. Defendants do not agree to an amendment.

3.    Plaintiff seeks to amend his pleadings herein in the form attached hereto as EXHIBIT 1. The modification of the instant pleading versus Plaintiff's *Fourth* Amended Complaint is

designated by yellow highlighting of the attached pleading. The proposed amendment also contains some re-numbering of paragraphs and deletions of certain allegations.

4.    Plaintiff's proposed amendment would essentially accomplish several objectives:

     a.     Add allegations that Rig Ventures, Inc. has violated Tex. Bus. & Com. Code, § 24.001, et seq, commonly known as the Uniform Fraudulent Transfer Act, including an application for injunction pursuant to such law enjoining Rig Ventures, Inc. from further disposition of assets, and the multiple transferees further disposition of transferred assets;

     b.     Add allegations of Negligence Per Se regarding violations of applicable OSHA and/or Coast Guard regulations;

     c.     Allege additional facts in support of alter ego allegations against Emilio Sanchez; and

     d.     Add allegations of Single Business Enterprise versus numerous defendants specified in Section IV(7) of Plaintiff's proposed Sixth Amended Complaint. Note that these allegations (minus certain factual allegations first plead in Plaintiff's Sixth Amended Petition as indicated by yellow highlight) are contained in Plaintiff's Fifth Amended Complaint, which was not accompanied by a Motion for Leave to Amend at that time based upon Plaintiff's impression such was not required given the Court's scheduling order allowing addition of Parties at the time Plaintiff's Fifth Amended Petition was filed. Plaintiff now seeks leave to add such allegations.

5.    Federal Rule of Civil Procedure 15(a) provides, "… a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 2

freely given when justice so requires." In deciding whether to grant leave to amend, a trial court

may consider such factors as undue delay, bad faith, or dilatory motive on behalf of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to

opposing party(s), and futility of amendment. *Matter of Southmark Corp.*, 88 F.3d 311 (5th Cir.

1996). The amendments sought would not cause undue delay; are sought not out of bad faith

but rather to plead causes of action and facts recently discovered; are not for purposes of delay

but that justice may be done; would not cause any undue prejudice to defendants; and such

amendment are not futile but rather are necessary to bring all available causes of action and

supporting facts before the Court and to avoid manifest injustice.

## Argument

**A.**   **Plaintiff urges the Court that leave should be granted to allow the proposed amendment pertaining to allegations of violations of the Texas Uniform Fraudulent Transfer Act, TEX.BUS.&COM.CODE § 24.001 *et seq.*, and allegations of Single Business Enterprise.**

Following *Matter of Southmark Corp,* supra, the proposed amendments will not cause

undue delay, are not motivated by bad faith or dilatory motive on behalf of the movant, and are

not necessitated by repeated failure to cure deficiencies by amendments previously allowed.

Further, the amendments would not cause undue prejudice to defendants, and the amendments

are not futile.

The merit of Plaintiff's proposed amendment of fraudulent transfer was unknown until

the July 8, 2004 deposition of Defendant Rig Ventures, Inc.'s CPA/bookkeeper, Norma Garza,

and more specifically, until Plaintiff's expert completed his evaluation of Ms. Garza's deposition

and documents produced at or soon before such deposition. Plaintiff diligently attempted to

obtain the deposition of Ms. Garza commencing in late January 2004 and thereafter until the

deposition occurred on July 8, 2004. The lengthy delay in obtaining Ms. Garza's deposition was

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 3

not caused by the fault of plaintiff, but for various reasons including defendant's difficulty in compiling requested documents, the discovery stay after removal to federal court, and other circumstances not the fault of Plaintiff. As a result of this delay, Plaintiff learned for the first time the substance and merit of allegations contained within Sections IV(5) and (7) of proposed Plaintiff's Sixth Amended Petition regarding violations of the Fraudulent Transfer Act and Single Business Enterprise, respectively.    That is not to say that Plaintiff's counsel did not suspect these causes of action before Ms. Garza's deposition, they did, as discussed below.

Prior to the deposition of Norma Garza on July 8, 2004, Plaintiff had access to certain financial information of Rig Ventures, Inc. and Emilio Sanchez, which alerted Plaintiff to *possible* causes of action pursuant to the Fraudulent Transfer Act and the doctrine of Single Business Enterprise, but Plaintiff's suspicions in this regard were not confirmed until the deposition of Norma Garza, and then only after Plaintiff's retained expert, Joe Nelson, CPA, CFE completed a very time-consuming and detailed analysis of the financial information and Ms. Garza's testimony in the context of the application of the Fraudulent Transfer Act and Single Business Enterprise, which in fact was only recently completed. (See attached report and supplemental report of Joe Nelson, CPA, CFE, EXHIBIT 2)

The quandary that Plaintiff's counsel then found himself in was whether to amend to add the allegations months ago when unconfirmed suspicions regarding the now sought amendments existed, but before all information was available and thoroughly reviewed by a competent expert, or rather, to wait until plaintiff's counsel's suspicions were confirmed by additional evidence and expert analysis. Plaintiff chose the latter option, opting to refrain from making allegations until the soundness of such allegations was soundly confirmed by additional relevant evidence and review by a competent expert. This is not to say that plaintiffs should refrain from making

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 4

allegations in every instance until confirmed by expert analysis – that obviously is not the case. However, the application of the complex financial data to the doctrine of single business enterprise and the Fraudulent Transfer Act is a matter admittedly not within the undersigned counsel's ability to reliably ascertain without the assistance of an expert such as the one retained. Plaintiff urges the decision in this regard was an easy one – do not file until all suspicions are confirmed, and Plaintiff respectfully urges the Court that leave should be freely granted in such circumstance unless some undue prejudice or injustice works upon Defendants. The proposed amendments would not cause *undue* prejudice on Defendants.

The financial information available to Plaintiff before Norma Garza's deposition includes the following and was obtained on the dates indicated below:

1. Contained in Rig Ventures, Inc.'s Third Supplemental Responses to Plaintiff's Request for Production, served upon Plaintiff January 16, 2004.
   a. Rig Ventures Balance Sheet as of December 31, 2001
   b. Rig Ventures Profit & Loss Jan - Dec 2001
   c. Rig Ventures Balance Sheet as of December 31, 2002
   d. Rig Ventures Profit & Loss Jan - Dec 2002
   e. Rig Ventures Tax Returns for years 2001 & 2002
2. Contained in Emilio Sanchez's Third Supplemental Responses to Plaintiff's Request for Production, served upon Plaintiff January 16, 2004.
   a. Tax Returns for Emilio Sanchez for years 2001 & 2002
   b. Revolving Option Promissory Note between Rig Ventures and Emilio Sanchez
3. Produced by counsel correspondence on June 17, 2004
   a. Rig Venture's Transaction Detail by Account (Quickbook report) for period January 2000 - February 22, 2004.
   b. Rig Ventures Chart of Accounts and Trial Balance (Quickbook report) dated February 22, 2004
4. Produced by counsel correspondence on June 29, 2004
   a. Revolving Option Promissory Notes (See attached EXHIBIT 2, a representative note, each note is identical except as to parties and face amount) as follows:
      i. Emilio Sanchez (lender) → Rig Ventures (borrower)
      ii. Esjay Green, Inc. (lender) → Rig Ventures (borrower)
      iii. Rig Ventures → Esjay Green
      iv. Esco Marine, Inc. → Rig Ventures
      v. Rig Ventures → Esco Marine

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 5

      vi.  Dominion Shipping → Rig Ventures
     vii.  Rig Ventures → to Dominion Shipping
    viii.  Sanco International → Rig Ventures
     ix.  Rig Ventures → Sanco International
      x.  Rig Ventures → Sanship
     xi.  Rig Ventures → Saber Steel
     xii.  Saber Steel → Rig Ventures

5.     Produced by counsel correspondence on July 1, 2004
    a.  Rig Ventures bank statements for period January 31, 2002 – April 30, 2002; Feb 28, 2003 - December 31, 2003; and January 30, 2004 - June 2004

6.     Produced by counsel at deposition of Norma Garza on July 8, 2004
    a.  Revolving option promissory notes as follows:
       i.  Pan Holding, Inc. → Rig Ventures, Inc.
      ii.  Rig Ventures, Inc. → Northern Bay Peat, LLC
     iii.  Rig Ventures, Inc. → Atlantic Trading, LLC
     iv.  Rig Ventures, Inc. → Fort Caswell, LLC
      v.  Rig Ventures, Inc. → SanJar Properties, LLC
    b.  Promissory Note: Rig Ventures, Inc. → Johnathan Feffer

For sake of avoiding multiple voluminous exhibits perhaps not necessary for the Court's consideration of the instant matter, Plaintiff has not attached the above documents to the instant motion, and instead has attached the Affidavit of Scott Webre (EXHIBIT 3) setting forth the accuracy of the above. Should the Court desire to examine the underlying documentation referenced above, Plaintiff will promptly provide the documents for the Court's consideration.

Emilio Sanchez was deposed on January 28, 2004, at which time the following exchange occurred regarding discovery into the cash flow of Rig Ventures, Inc.:

Q.    Mr. Sanchez, your lawyer and I spoke about how we should best conduct an inquiry into the cash flow of Rig Ventures, in years 2001 and 2002, and for that matter, I'll have to look at it, but potentially in 2000 which would go back to the beginning of the Ocean 66 project. And given that we are lacking some of the documents here today, I think it's been agreed that we will postpone those questions until a time where we have the documents and you can designate the person you would like to testify about that.
A.    That would be fine.
    Mr. Webre:      Is that okay Mr. Hernandez?
    Mr. Hernandez:    Yes.
(See attached EXHIBIT 4, p. 98, ll. 8-20)

Mr. Sanchez also testified:

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 6

Q. Is there a single ledger or document that would show equity payments to you from Rig Ventures and payments by you to capitalize or other provide equity to Rig Ventures?

A.     There would be some deposits or transferred moneys such as that.

Q.     But a ledger, a single document that would show an account register?

A.     I think you'd have to ask Norma Garza what she has on that.

(Id. p. 164, l. 23 thru p. 165, l. 7; see also, p. 108, ll. 5-16; p. 96, ll. 20 thru p. 97, l. 14)

Moreover, Plaintiff inquired with Mr. Sanchez whether he maintained a personal financial statement, which the State District Court ordered produced (EXHIBIT 5). Mr. Sanchez indicated he maintains such a document (EXHIBIT 4, p. 163, l. 25 thru p. 164, l. 2; ) To date, these documents have still not been produced notwithstanding numerous requests. A second motion to compel is forthcoming on this issue and has not been filed as yet only because plaintiff has not wanted to piece-meal motions to compel to the Court, instead choosing to bring numerous issues to the Court's attention simultaneously, which will soon occur.

Plaintiff is not suggesting that discussion regarding financial matters did not occur during Mr. Sanchez' deposition – it did, but such was largely unproductive, which prompted the agreement of counsel indicated above. It is axiomatic that had the undersigned determined that Mr. Sanchez' testimony or the documentation then available warranted good faith allegations as now sought in the proposed amendment, such would have then been pleaded. It was not until the deposition of Ms. Garza on July 8, 2004, and more importantly, after Plaintiff's retained expert, Joe Nelson, CPA, CFE sorted through Ms. Garza's deposition and relevant documentation and completed his analysis of this matter, did Plaintiff feel warranted in making the instant allegations. Mr. Nelson, who attended Ms. Garza's deposition (transcript delivered July 15, 2004), then issued two reports attached hereto as EXHIBIT 2, the latter report not received until immediately prior to the instant motion. Mr. Nelson's second report comes significantly after the

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 7

expert report deadline established by the court (August 2, 2004) and then extended by agreement (See EXHIBIT 6), and for essentially the same reasons as stated herein, Plaintiff seeks leave of court to allow Plaintiff's late filing of Joe Nelson's supplemental report. In this regard, Plaintiff would show good cause exists to allow such late filing for the same reasons good cause exists for leave to amend. Further, there exists no prejudice upon Defendant in this late filing in that Mr. Nelson has not yet been deposed. Mr. Nelson's deposition will likely occur in late October.

The amendments sought herein and the late filing of Mr. Nelson's report is necessary to avoid a manifest injustice. Without such amendment to pleadings, Rig Ventures, Inc., which is insolvent, would be allowed to effectively escape liability herein by its willful decision to NOT have liability or LHWCA insurance, and then after numerous substantial financial transactions in the wake of Mr. Gilbert's injury that have effectively put the liquid assets of Rig Ventures, Inc. into the accounts of Mr. Sanchez' numerous other corporations. Remarkably, Defendant's intention to impair its financial condition with the express intention of protecting itself and preventing Mr. Gilbert's recovery is demonstrated by the attached EXHIBIT 7. On March 7, 2002, Defendant Richard Jaross sent Defendant Emilio Sanchez a copy of a Fax Transmission received from plaintiff's prior attorney, making the handwritten notation, "Bad News!! We need to either make sure we have lien (??) on rig or sell rig – RJ !!" Even though the rig has not yet been sold to our knowledge (largely because it was seized by action in the United State District Court for the Western District of Louisiana for unpaid debts owed the shipyard in which Ocean 66 was stored), this shows defendant's calculated scheme to deprive plaintiff of assets from which to recover any judgment. Plaintiff urges the Court that leave should be granted in the interest of justice because without the causes of action for fraudulent transfer and single business enterprise for which the instant amendment is sought, Rig Ventures, Inc. and Emilio Sanchez

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 8

will be allowed an avenue to escape justice, leaving only Alter Ego/Pierce the Corporate Veil as means by which to impose liability on Emilio Sanchez in his individual capacity.

**B.    Plaintiff urges the Court that leave should be granted to allow the proposed amendment pertaining to allegations of negligence per se for violations of OSHA and Coast Guard regulations.**

Plaintiff's proposed amendment to add allegations of Negligence Per Se is one primarily of form because Plaintiff has pleaded violations of OSHA and Coast Guard regulations in Plaintiff's Second Amended Petition, ¶16i (filed 2/9/04 in State District Court), and has continued those allegations though the current petition.  The only thing that is different is that Plaintiff seeks to add the specific allegation of "Negligence *Per Se*" as actions against both Rig Ventures, Inc. and Richard Jaross.  There is no prejudice to Defendants by the addition of the allegation of Negligence *Per Se*, when the substance of the allegations, i.e. regulatory violations, has long since been pleaded.  Moreover, Defendants were timely provided the expert reports of Plaintiff's retained experts, Larry Robichaux and John Manders, experts in crane operation, maritime matters and regulatory compliance, and such reports itemize in detail the defendants' violations of Coast Guard and OSHA regulations.  These experts have not been deposed, though proposed dates in mid-October have been exchanged.

## CONCLUSION

Plaintiff seeks leave to amend so that justice may be done.  Defendant Emilio Sanchez has made purposeful choices to Plaintiff's detriment in this case, including (1) purchasing no liability insurance; (2) purchasing no LHWCA insurance; (3) undercapitalizing Rig Ventures, Inc.; (4) and most importantly for instant considerations, deliberating shedding Rig Ventures, Inc.'s assets to other Sanchez companies in an effort to avoid payment of liability in this suit.  Plaintiff's proposed amendments are not necessitated by any delay or fault of Plaintiff, to the

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 9

contrary, Plaintiff has diligently prosecuted this suit.  The proposed amendments will not cause any undue prejudice to Defendants, indeed, it will only bring them to justice if Plaintiff is able to prevail.  Finally, the proposed amendments are anything but futile; rather, they represent some of Plaintiff's best hope to recover damages for his injuries.

## PRAYER

Wherefore, premises considered, Plaintiff respectfully requests leave of court to file the previously filed Plaintiff's Fifth Amended Complaint Under General Maritime Law and State Law, attached AND Plaintiff's Sixth Amended Complaint Under General Maritime Law and State Law with Application for Injunction, and for such other and further relief to which Plaintiff may be justly entitled.

Date:   October 1, 2004                          Respectfully submitted,


SCOTT WEBRE
Attorney-in-Charge
Texas State Bar Number 21050070
Southern District Number 20150070
556 Jefferson Street
Jefferson Towers, Suite 200
Lafayette, Louisiana 70501
(337) 593-4178
(337) 593-4159 (fax)

FRANK COSTILLA
Texas State Bar Number 04856500
Southern District Number 04856500
The Law Office of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 544-3152 (fax)

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 10

RYAN KREBS, M.D., J.D.
Texas State Bar Number 00792088
Southern District Number 00792088
6601 Vaught Ranch Road, Suite 100
Austin, Texas 78730
(512) 478-2072
(512) 494-0420 (fax)

By:    _____
       SCOTT WEBRE

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing document was served on counsel for all parties that have appeared, as indicated below, on this ____ day of October, 2004:

*Via CMRRR 7003 3110 0003 4812 1118*
Luis R. Hernandez
Fleming & Hernandez, P.C.
1650 Paredes Line Road, Suite 102
Brownsville, TX  78521

_____
SCOTT WEBRE

Gilbert vs. Rig Ventures, et al
Plaintiff's Motion For Leave to Amend Pleadings
Page 11

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES DAVID GILBERT | * | |
| | * | |
| | * | |
| | * | CIVIL ACTION NO. B04-CV-047 |
| VERSUS | * | |
| | * | |
| | * | JUDGE HILDA G. TAGLE |
| RIG VENTURES, INC.; EMILIO SANCHEZ; | * | |
| RICHARD JAROSS; ESCO MARINE, INC.; | * | |
| DOMINION SHIPPING, INC.; ATLANTIC | * | |
| TRADING GROUP, LLC; FORT | * | |
| CASWELL, LLC; ESJAY GREEN SHIPPING, | * | |
| INC.; SABER STEEL, INC.; SANCO | * | |
| INTERNATIONAL, INC.; SANSHIP, INC.; | * | |
| NORTHERN BAY PEAT, LLC; | * | |
| AND PAN HOLDING, INC. | * | |

**PLAINTIFF'S SIXTH AMENDED COMPLAINT UNDER GENERAL
MARITIME LAW AND STATE LAW, WITH APPLICATION FOR INJUNCTION
PURSUANT TO THE UNIFORM FRAUDULENT TRANSFER ACT**

TO THE HONORABLE HILDA G. TAGLE:

COMES NOW JAMES DAVID GILBERT, hereinafter sometimes referred to as "Plaintiff,"

through undersigned counsel, and files this, his Plaintiff's Sixth Amended Complaint under

General Maritime Law and State Law, with Application for Injunction Pursuant to The Uniform

Fraudulent Transfer Act complaining of RIG VENTURES, INC.; EMILIO SANCHEZ; RICHARD

JAROSS, ESCO MARINE, INC., DOMINION SHIPPING, INC., ATLANTIC TRADING GROUP, LLC, FORT

CASWELL, LLC, ESJAY GREEN SHIPPING, INC., SABER STEEL, INC., SANCO INTERNATIONAL, INC.,

SANSHIP, INC., NORTHERN BAY PEAT, LLC, AND PAN HOLDING, INC. and for cause of action

would respectfully show the Court as follows:

1.     This matter is brought on the civil side under the general maritime law and Texas law pursuant to 33 U.S.C. § 905(a) for negligence causing personal injury, and for violations of the Uniform Fraudulent Transfer Act, TEX.BUS.&COM.CODE, § 24.001, et seq.

2.     Plaintiff, JAMES DAVID GILBERT, is a natural person whose current primary residence is located in Williamson County, Texas.  At all times pertinent to this cause of action, Plaintiff Gilbert's primary residence was located in Cameron County, Texas.

3.     Defendant, RIG VENTURES, INC. is a Delaware corporation registered to do business in Texas, and doing business in Texas, at the time of the incident giving rise to this lawsuit.  This Defendant has appeared and answered herein.

4.     Defendant, EMILIO SANCHEZ, is an individual residing in Cameron County, Texas at all times relevant hereto, and has appeared and answered herein

5.     Defendant, RICHARD JAROSS, is an individual residing in Cameron County, Texas, and has appeared and answered herein.

6.     Defendant ESCO MARINE, INC., is a Texas corporation doing business in Texas and may be served by serving its registered agent for service of process, Emilio Sanchez, at its registered address for service of process, 6665 East 14th Street, Brownsville, TX  78521.

7.     DOMINION SHIPPING, INC., is an active Texas corporation that may be served in Texas by serving its registered agent for service of process, Gohdan Mysko, 3 Riverway, Suite 1250, Houston, TX  77056.

8.     ATLANTIC TRADING GROUP, LLC, is a limited liability company on information provided by Emilio Sanchez.  Plaintiff has been unable to obtain registered agent and registered address information.  Plaintiff avers service of process on this defendant shall be effective upon serving its member, Emilio Sanchez at 6665 East 14th Street, Brownsville, TX  78521.

9.    FORT CASWELL, LLC, is a limited liability company on information provided by Emilio Sanchez. Plaintiff has been unable to obtain registered agent and registered address information. Plaintiff avers service of process on this defendant shall be effective upon serving its member, Emilio Sanchez at 6665 East 14th Street, Brownsville, TX 78521.

10.    ESJAY GREEN SHIPPING, INC., is a corporation doing business in the United States of America. It is unknown in what state this entity is incorporated. Plaintiff avers service of process on this defendant shall be effective upon serving the person believed to be its president, Emilio Sanchez at 6665 East 14th Street, Brownsville, TX 78521.

11.    SABER STEEL CORP is an active Texas corporation doing business in Texas and may be served by serving its registered agent for service of process, Emilio Sanchez, at its registered address for service of process, 6665 East 14th Street, Brownsville, TX 78521.

12.    SANCO INTERNATIONAL, INC., an active Texas corporation doing business in Texas and may be served by serving its registered agent for service of process, Emilio Sanchez, at its registered address for service of process, 6665 East 14th Street, Brownsville, TX 78521.

13.    SANSHIP, INC., an active Texas corporation doing business in Texas and may be served by serving its registered agent for service of process, Emilio Sanchez, at its registered address for service of process, 6665 East 14th Street, Brownsville, TX 78521.

14.    NORTHERN BAY PEAT, LLC, is a limited liability company on information provided by Emilio Sanchez. Plaintiff has been unable to obtain registered agent and registered address information. Plaintiff avers service of process on this defendant shall be effective upon serving its member, Emilio Sanchez at 6665 East 14th Street, Brownsville, TX 78521.

15.    Pan Holding, Inc. is a corporation doing business in the United States of America. It is unknown in what state this entity is incorporated. Plaintiff avers service of process on this

defendant shall be effective upon serving the person believed to be its president, Emilio Sanchez at 6665 East 14th Street, Brownsville, TX 78521.

### I. Jurisdiction and Venue

16.    This Court has jurisdiction over the parties to this action because they each reside in the United States of America, do business in the United States of America, and/or are citizens of the United States of America.

17.    The Court has jurisdiction over the subject matter of the instant suit pursuant to 28 U.S.C. §§ 1331, 1333. The Court has pendant jurisdiction over the Texas tort claims and claims for fraudulent transfer pursuant 28 U.S.C. § 1367(a).

18.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because Defendants Emilio Sanchez and Richard Jaross reside in such district.

### II. FACTS

19.    This is a personal injury action brought pursuant to state law and general maritime law.

20.    Defendant Rig Ventures, Inc. employed Plaintiff and Phil Wells to perform work aboard Mobile Offshore Drilling Unit OCEAN 66, herein referred to as "MODU OCEAN 66."

21.    After several months of work performed offshore in the Gulf of Mexico readying "MODU OCEAN 66" for transport, Rig Ventures, Inc. arranged for the transport of such drilling unit to a shipyard in Lake Charles, Louisiana, where Phil Wells, Plaintiff, and other of Rig Ventures, Inc.'s agents, servants, and/or employees, performed salvage and/or repair operations.

22.    On or about December 30, 2001, Phil Wells, while operating a crane attached to "MODU OCEAN 66", negligently caused a pipe on which Plaintiff was relying for support of his

body to be pulled away from Plaintiff, causing Plaintiff to fall a significant distance and incur severe personal physical injury.

23.    At all times relevant hereto, Plaintiff and Phil Wells were authorized agents, servants, and/or employees of Defendant, Rig Ventures, Inc., and were acting for and on behalf of Defendant, Rig Ventures, Inc. at all times relevant hereto.

24.    At all times relevant hereto, Defendant Emilio Sanchez was the sole shareholder, president, and director of Rig Ventures, Inc.

25.    At all times relevant hereto, Defendant, Richard Jaross, was an agent, apparent agent, agent by estoppel, joint venturer, and/or joint enterpriser of Rig Ventures, Inc. for purposes of repair and/or salvage of "MODU OCEAN 66," and was given authority by Rig Ventures, Inc. to direct salvage operations of "MODU OCEAN 66" on behalf of Rig Ventures, Inc.

26.    Pursuant to such authority described in the preceding paragraph, Richard Jaross directed salvage operations of "MODU OCEAN 66" by selecting and hiring persons to perform labor aboard "MODU OCEAN 66," and by directing, supervising, and controlling such salvage operations.

27.    At all times relevant hereto, Defendant Rig Ventures, Inc. borrowed  money from Defendant Emilio Sanchez pursuant to a "Revolving Option Promissory Note" under terms and conditions reflecting such loan transactions were at less than arm's length.

28.    At all times relevant hereto, Defendant Rig Ventures, Inc. borrowed money from, and loaned money to, Defendant Esjay Green Shipping, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

29.    At all times relevant hereto, Defendant Esco Marine, Inc. borrowed money from, and loaned money to, Defendant Rig Ventures, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

30.    At all times relevant hereto, Defendant Dominion Shipping, Inc. borrowed money from, and loaned money to, Defendant Rig Ventures, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

31.    At all times relevant hereto, Defendant Sanco International, Inc. borrowed money from, and loaned money to, Defendant Rig Ventures, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

32.    At all times relevant hereto, Defendant Sanship, Inc. borrowed money from, and loaned money to, Defendant Rig Ventures, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

33.    At all times relevant hereto, Defendant Saber Steel, Inc. borrowed money from, and loaned money to, Defendant Rig Ventures, Inc. pursuant to separate "Revolving Option Promissory Notes" under terms and conditions reflecting such loan transactions were at less than arm's length.

34.    At all times relevant hereto, Defendant Northern Bay Peat, LLC borrowed money from Defendant Rig Ventures, Inc. pursuant to a "Revolving Option Promissory Note" under terms and conditions reflecting such loan transactions were at less than arm's length.

35. At all times relevant hereto, Defendant Atlantic Trading Group, LLC borrowed money from Defendant Rig Ventures, Inc. pursuant to a "Revolving Option Promissory Note" under terms and conditions reflecting such loan transactions were at less than arm's length.

36. At all times relevant hereto, Defendant Fort Caswell, LLC borrowed money from Defendant Rig Ventures, Inc. pursuant to a "Revolving Option Promissory Note" under terms and conditions reflecting such loan transactions were at less than arm's length.

37. At all times relevant hereto, Defendant Rig Ventures, Inc. borrowed money from Defendant Pan Holding, Inc. pursuant to a "Revolving Option Promissory Note" under terms and conditions reflecting such loan transactions were at less than arm's length.

## IV. CAUSES OF ACTION
### (1) CAUSE OF ACTION VERSUS RIG VENTURES, INC. UNDER GENERAL MARITIME LAW

38. Plaintiff realleges in support of the instant cause of action all facts pleaded above.

39. Plaintiff avers he is an employee of Rig Ventures, Inc. pursuant to 33 USCS § 902(3), Longshore and Harbor Worker's Compensation Act, herein "The Act," and that Rig Ventures, Inc. is his employer, or borrowed employer, pursuant to The Act.

40. Plaintiff avers Rig Ventures, Inc. has failed to secure payment as required by The Act or pursuant to Texas law, and seeks to maintain the instant action for the full measure of his damage and any and all consequential damages, as alleged herein below, pursuant to the general maritime law and at law, pursuant to § 905(a) of The Act.

41. Rig Ventures, Inc. proximately caused severe personal injury to Plaintiff through breach of nondelegable duties to secure a safe workplace, including but not limited to the following negligent and grossly negligent acts and/or omissions:

a.  In failing to properly train and supervise its agents, servants, and/or employees, including but not limited to Plaintiff and Phil Wells;

b.  In failing to adopt, promulgate, and enforce appropriate policies and procedures to reasonably ensure the safety and welfare of its agents, servants, and/or employees working on the platform;

c.  In failing to provide reasonable safety equipment to its agents, servants, and/or employees, including Plaintiff, working on the platform;

d.  In negligently selecting, instructing, and supervising Frank Ruiz, Sr. and/or Phil Wells;

e.  In negligently entrusting the operation of the crane in question to Phil Wells;

f.  In negligently entrusting Phil Wells to supervise the crew aboard "MODU OCEAN 66" at the time of the incident in question and to comply with all applicable safety regulations;

g.  In providing machinery and/or equipment owned by Rig Ventures, Inc. for use by the crew aboard MODU OCEAN 66 that was faulty, defective, and/or in disrepair;

h.  In failing to take reasonable precautions to ensure that its agents, servants, and/or employees were provided a safe working environment in which to accomplish the tasks assigned by Rig Ventures, Inc.;

i.  In relying on Richard Jaross to oversee salvage operations aboard MODU Ocean 66; and

> j.  In violating applicable federal regulations promulgated by OSHA and/or the U.S. Coast Guard and other applicable laws, rules, and regulations pertaining to workplace safety.

42.  Plaintiff avers each and every of defendants' acts and omissions constituting negligence alleged in support of the instant cause of action were proximate causes of the injuries and damages sustained by plaintiff and alleged below.

## (2) CAUSES OF ACTION VERSUS RIG VENTURES, INC. UNDER TEXAS STATE LAW CLAIMS – NEGLIGENCE, NEGLIGENCE PER SE, AND GROSS NEGLIGENCE/MALICE

43.  Plaintiff realleges in support of the instant cause of action all facts pleaded above in support of the instant actions for negligence, negligence per se, and gross negligence/malice.

44.  Rig Ventures, Inc. is liable to Plaintiff pursuant to the doctrine of negligence per se for its violations of OSHA and/or Coast Guard regulations pertaining to the issues of workplace safety, crane operation/condition/inspection/repair, and use of fall protection.

45.  Rig Ventures, Inc. proximately caused severe personal injury to Plaintiff through breach of nondelegable duties, including but not limited to the specific negligent, grossly negligent and/or malicious acts and/or omissions specified above in paragraph 41, which is realleged herein as if fully stated herein.

## (3) CAUSES OF ACTION VERSUS EMILIO SANCHEZ UNDER ALTER EGO AND PIERCE THE CORPORATE VEIL

46.  Plaintiff realleges each fact plead hereinabove in support of the instant cause of action.

47.  Emilio Sanchez operates Rig Ventures, Inc. as a mere tool or business conduit of Emilio Sanchez. Plaintiff alleges all facts alleged herein in support of the instant cause of action.

48.    Emilio Sanchez utilizes the corporate form of Rig Ventures, Inc. as a sham to perpetrate a fraud upon corporate creditors including Plaintiff, and/or or as a means of avoiding personal liabilities.

49.    Rig Ventures, Inc. was at inception and is now undercapitalized given the likelihood and magnitude of debts to be incurred by the corporation, including debts for tort damages as alleged herein. In support of this allegation, plaintiff would show:

      a.    Rig Ventures, Inc. sole initial capitalization was $1,000; and

      b.    Rig Ventures, Inc. maintained no liability insurance at times relevant hereto to insure against losses of the kind suffered by Plaintiff.

50.    Emilio Sanchez has used the corporate form of Rig Ventures, Inc. as an unfair device to achieve an unjust result, that is, to deny injured workers, including Plaintiff, just compensation for damages caused by Rig Ventures, Inc.'s negligence.

51.    Emilio Sanchez exercised complete and absolute control over the financial transactions of Rig Ventures, Inc.

52.    Pursuant to such absolute control, Emilio Sanchez caused Rig Ventures, Inc. to engage in numerous large financial transactions with other corporations or limited liability companies of which Emilio Sanchez was sole shareholder and president, and upon such terms and conditions, express or implicit, that made such transactions less than arm's length and to the detriment of Rig Ventures, Inc., and thus potential creditors such as Plaintiff.

53.    Plaintiff incorporates by reference as if fully stated herein verbatim all facts alleged below in Cause of Action (5) entitled "Fraudulent Transfers" in support of the instant cause of action.

## (4) CAUSE OF ACTION VERSUS RIG VENTURES, INC.
## FOR VICARIOUS LIABILITY

54.    <u>Respondeat Superior – Rig Ventures/Phil Wells:</u>    Phil Wells and other members of the crew of the MODU OCEAN 66 were employees of Rig Ventures, Inc. at the time of the incident giving rise to this lawsuit.

55.    Facts indicating an employer/employee relationship by and between Rig Ventures, Inc. and Phil Wells and other the members of the crew include, among other things:

a.    Rig Ventures, Inc. filed a report of injury with the U.S. Dept. of Labor, contending it employs James David Gilbert, whose situation and circumstances vis-à-vis Rig Ventures, Inc. is similar in all pertinent respects to that of Phil Wells and Rig Ventures, Inc.

b.    Rig Ventures, Inc. maintained the right to control the progress, details, and methods of operations of the alleged employees' work, including maintaining and/or exercising control over, or maintaining the right to control:

1.    when and where to begin and stop work and the regularity of hours;

2.    the amount of time spent on particular aspects of the work;

3.    the tools and appliances used to perform the work; and/or

4.    the physical method or manner of accomplishing the end result.

c.    Rig Ventures, Inc. owned the vast majority of equipment and machinery used during the incident in question and at other times, and did not require that the alleged employees furnish their own tools or equipment;

d.    Rig Ventures, Inc. was free to determine the method of payment to the members of the crew of the MODU OCEAN 66; and

e.    Rig Ventures, Inc. paid the members of the crew on a unit of time basis rather than per the job.

56.    Therefore, Rig Ventures, Inc. is vicariously liable for the negligent and grossly negligent and/or malicious acts and omissions, as "malice" is defined by the Texas Civil Practice and Remedies Code, of Phil Wells and other members of the crew of the MODU OCEAN 66 pursuant to the doctrine of respondeat superior.

57.    Agency – Rig Ventures, Inc./Phil Wells:  In the alternative, Phil Wells was an agent, ostensible agent, and/or agent by estoppel of Rig Ventures, Inc. acting within the course and scope of his agency at all times relevant hereto.  Rig Ventures, Inc. maintained the right of control over the details of the conduct of Phil Wells giving rise to this suit.  Rig Ventures, Inc. is thus liable for the negligent and grossly negligent acts of Phil Wells pursuant to the doctrine of Agency, Ostensible Agency, and Agency by Estoppel.

58.    Agency – Rig Ventures, Inc./Richard Jaross: Richard  Jaross  was  an  agent, ostensible agent, and/or agent by estoppel of Rig Ventures, Inc. acting within the course and scope of his agency at all times relevant hereto, and Rig Ventures, Inc. maintained the right of control over the details of the conduct of Richard Jaross giving rise to this suit.  Rig Ventures, Inc. is thus liable for the negligent and grossly negligent acts of Richard Jaross pursuant to the doctrine of Agency, Ostensible Agency, and Agency by Estoppel.

59.    Mission – Rig Ventures, Inc./ Phil Wells:    Defendant  Rig  Ventures,  Inc.  is liable for the negligent and grossly negligent acts and omissions of Phil Wells pursuant to the theory of Mission because Defendant Rig Ventures, Inc. stood to benefit from the acts and omissions of Phil Wells, and Defendant Rig Ventures, Inc. maintained the right of control over the work performed by Phil Wells.

60.    <u>Mission – Rig Ventures, Inc./ Richard Jaross</u>:    Defendant Rig Ventures, Inc. is liable for the negligent and grossly negligent acts and omissions of Richard Jaross pursuant to the theory of Mission because Defendant Rig Ventures, Inc. stood to benefit from the acts and omissions of Richard Jaross and Defendant Rig Ventures, Inc. maintained the right of control over the work performed by Richard Jaross.

61.    <u>Joint Enterprise – Rig Ventures, Inc./ Richard Jaross</u>:    Defendant Rig Ventures, Inc. and Defendant Richard Jaross were engaged in a joint enterprise or joint venture pertaining to the salvage and repair operations of the MODU OCEAN 66.  Particularly, Richard Jaross and Rig Ventures, Inc. had an agreement and common purpose to be carried out by them, there existed a community of pecuniary interest in that purpose, and Rig Ventures, Inc. and Richard Jaross had an equal right to a voice in the direction of the enterprise, which gives an equal right of control.    Accordingly, each is liable for the acts of the other as pleaded herein.

62.    <u>Peculiar-Risk and Inherently-Dangerous Doctrines</u>:    Pleading alternatively, in support of the application of the peculiar-risk and inherently-dangerous doctrines as exceptions to the general rule of non-liability for independent contractors, Plaintiff avers the salvage work performed at all times relevant hereto was inherently dangerous and that Defendants Rig Ventures, Inc. and Richard Jaross failed to undertake reasonable precautions to protect Plaintiff against the inherently dangerous nature of the work to be performed aboard MODU OCEAN 66, including but not limited to failing to provide equipment and machinery in good working order and/or failure to arrange for competent repair of equipment and machinery and/or failure to hire, train, and/or supervise personnel competent to handle the tasks to be performed aboard MODU OCEAN 66.

63.     Pleading alternatively, Plaintiff invokes the application of § 938 of The Act. Plaintiff alleges Rig Ventures, Inc.'s president, secretary, and treasurer are severally personally liable, jointly with Rig Ventures, Inc. for any and all damages accruing under The Act, including all damages sought herein pursuant to 33 U.S.C. § 905(a), for reason of Defendant Rig Ventures' failure to secure compensation under the LHWCA.

### (5) CAUSE OF ACTION VERSUS RIG VENTURES, INC., EMILIO SANCHEZ, AND ALL TRANSFEREE DEFENDANTS IDENTIFIED BELOW FOR FRAUDULENT TRANSFER

64.     Plaintiff realleges all facts herein in support of the instant cause of action. Defendant Rig Ventures, Inc. transferred assets with actual intent to hinder, delay, or defraud Plaintiff in violation of TEX.BUS.&COM.CODE § 24.001 et seq., herein referred to as Uniform Fraudulent Transfer Act.

65.     Defendant Rig Ventures, Inc. transferred assets without receiving a reasonably equivalent value in exchange for the transfer or obligation, and when Rig Ventures, Inc. was engaged in a transaction for which its remaining assets were unreasonably small in relation to the transaction in violation of the Uniform Fraudulent Transfer Act.

66.     Transactions constituting violations of the Uniform Fraudulent Transfer Act include, but are not necessarily limited to:

a.     The payment to Sanco International to pay off an inter-company debt in the approximate amount of $54,251;

b.     The payment to Saber Steel, Inc. the amount of $500,000 prior to the dissolution of Saber Steel, Inc. and any subsequent disposition of such asset to Emilio Sanchez;

c.    The payment/extinguishments of Sanco and Pan Holding liabilities to Rig Ventures, Inc. by applying Sanship, Dominion Shipping, Esjay Green, and Esco Marine receivables against such indebtedness for the approximate sum total of $130,335, thus representing a transfer of Rig Ventures, Inc.'s assets in such amount to other of Emilio Sanchez companies as referenced

67.    Each transaction referenced in paragraph 66 was made to an insider or affiliate of Rig Ventures, Inc.

68.    Each transaction referenced in paragraph 66 was characterized by the following:

a.  there was not a reasonably equivalent value provided Rig Ventures, Inc.;

b.  it was made when Rig Ventures was insolvent; and

c.  the transfer occurred soon after Emilio Sanchez realized he had a potential large liability in connection with James Gilbert's injuries.

69.    In connection with the transactions referenced in paragraph 66, Plaintiff seeks all available remedies under Sections 24.008 of the Fraudulent Transfer Act, including:

a.    avoidance of each such transaction to the extent necessary to satisfy any judgment rendered herein;

b.    an attachment of the asset transferred pursuant to each such transaction;

c.    an injunction against further disposition by Rig Ventures, Inc. and the transferees in each such transaction, of the transferred assets as identified hereinabove;

d.    an appointment of a receiver to take charge of the asset transferred or other property of the transferee;

  e.  any other relief the circumstances may require in the interest of justice and

    equity.

  70.  Further, plaintiff seeks judgment pursuant to Section 24.009 of the Fraudulent

Transfer Act against the defendant transferee of such asset for the asset transferred to an amount

necessary to satisfy any judgment rendered herein.

  71.  Plaintiff seeks to recover attorney fees and costs in connection with his

prosecution of the instant allegation of fraudulent transfer pursuant to Section 24.013 of the

Fraudulent Transfer Act.

## APPLICATION FOR INJUNCTION

  72.  Pleading further for injunctive relief pursuant to the Uniform Fraudulent Transfer

Act, Plaintiff seeks a preliminary injunction and continuing through trial herein, and in support

hereof would show he will suffer imminent and irreparable harm if defendants Rig Ventures,

Inc., Emilio Sanchez, and all transferees identified hereinabove are not enjoined from further

disposing of identified transferred assets because further disposition of such assets would

effectively prevent Plaintiff from recovering any judgment as may be rendered herein, leaving

Plaintiff with no adequate remedy at law.

  73.  There is substantial likelihood that plaintiff will prevail on the merits for reasons

pleaded in paragraphs 64-68, which are incorporated herein as if fully stated in support of

Plaintiff's application for injunction.

  74.  The harm faced by plaintiff outweighs the harm that would be sustained by the

defendants if the injunction were granted.

  75.  Issuance of a preliminary injunction would not adversely affect public interest and

public policy, to the contrary, public policy would be served by enjoining these defendants from

further disposing of or encumbering assets identified above because public policy and the interests of justice requires corporations and individuals be prohibited from evading liability by the transfer of assets in violation of the Uniform Fraudulent Transfer Act.

76.    Plaintiff is indigent and unable to post a bond at this time, and requests the Court require no bond, or in the alternative, that a nominal bond be required in the interest of justice.

77.    Plaintiff asks the court to set his application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, issue a preliminary injunction against defendant.

### (6) CAUSES OF ACTION VERSUS RICHARD JAROSS UNDER GENERAL MARITIME LAW AND STATE LAW FOR NEGLIGENCE, GROSS NEGLIGENCE, and NEGLIGENCE PER SE

78.    Plaintiff realleges in support of the instant cause of action all facts pleaded above.

79.    <u>Negligence and Negligence Per Se</u>:  Richard Jaross owed a duty, as overseer of the salvage of MODU OCEAN 66 and joint venturer of Rig Ventures, Inc. in charge of the salvage of MODU OCEAN 66, to comply with OSHA and/or Coast Guard regulations, to select competent laborers, to arrange for their adequate training and supervision, to supply laborers safety devices such as but not limited to fall protection, and to ensure machinery and equipment provided such laborers, including the crane in question, was in good working order.

80.    Richard Jaross breached his duties owed Plaintiff through his negligence, negligence per se, gross negligence, and/or malice as that term is defined by the Texas Civil Practice and Remedies Code, in the following non-exclusive particulars:

> a. In failing to properly train and supervise its agents, servants, and/or employees, including but not limited to Plaintiff and Phil Wells;

b. In failing to adopt, promulgate, and enforce appropriate policies and procedures to reasonably ensure the safety and welfare of its agents, servants, and/or employees working on the platform;

c. In failing to provide reasonable safety equipment to its agents, servants, and/or employees, including Plaintiff, working on the platform;

d. In negligently selecting, instructing, and supervising Frank Ruiz, Sr. and/or Phil Wells;

e. In negligently entrusting the operation of the crane in question to Phil Wells;

f. In negligently entrusting Phil Wells to supervise the crew aboard "MODU OCEAN 66" at the time of the incident in question and to comply with all applicable safety regulations;

g. In providing machinery and/or equipment owned by Rig Ventures, Inc. for use by the crew aboard MODU OCEAN 66 that was faulty, defective, and/or in disrepair;

h. In failing to take reasonable precautions to ensure that its agents, servants, and/or employees were provided a safe working environment in which to accomplish the tasks assigned by Rig Ventures, Inc.; and

i. In violating applicable federal regulations promulgated by OSHA and/or the U.S. Coast Guard and other applicable laws, rules, and regulations pertaining to workplace safety.

81. Plaintiff avers each and every of Richard Jaross' acts and omissions constituting negligence alleged in support of the instant cause of action were proximate causes of the injuries and damages sustained by plaintiff and alleged below.

82.    <u>Joint Enterprise – Rig Ventures, Inc./ Richard Jaross</u>:  Defendant Rig Ventures, Inc. and Defendant Richard Jaross were engaged in a joint enterprise or joint venture pertaining to the salvage operations of the MODU OCEAN 66.  Particularly, Richard Jaross and Rig Ventures, Inc. had an agreement and common purpose to be carried out by them, there existed a community of pecuniary interest in that purpose, and Rig Ventures, Inc. and Richard Jaross had an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Accordingly, each is liable for the acts of the other as pleaded herein.

### (7) CAUSES OF ACTION PURSUANT TO THE DOCTRINE OF SINGLE BUSINESS ENTERPRISE VERSUS EMILIO SANCHEZ, RIG VENTURES, INC., ESCO MARINE, INC., DOMINION SHIPPING, INC., ATLANTIC TRADING GROUP, LLC, FORT CASWELL, LLC, ESJAY GREEN SHIPPING, INC., SABER STEEL, INC., SANCO INTERNATIONAL, INC., SANSHIP, INC., NORTHERN BAY PEAT, LLC, AND PAN HOLDING, INC.

83.    Plaintiff alleges Emilio Sanchez, Rig Ventures, Inc., Esco Marine, Inc., Dominion Shipping, Inc., Atlantic Trading Group, LLC, Fort Caswell, LLC, EsJay Green Shipping, Inc., Saber Steel, Inc., Sanco International, Inc., Sanship, Inc., Northern Bay Peat, LLC, and Pan Holding, Inc. were engaged in a Single Business Enterprise in that they integrated their resources to achieve a common business purpose.  Specifically, these corporations and limited liability companies, each solely owned or majority owned by Defendant Emilio Sanchez, pooled their assets in order to fund the operations giving rise to the instant suit.  Further, these corporations transferred assets and liabilities by and between each other with such frequency and at less than arms length to warrant the disregarding of the corporate protections otherwise afforded each of them in order to avoid injustice and in the interest of equity.  Plaintiff alleges all facts alleged hereinabove including specifically those facts set forth above in paragraph 66 in support of the instant cause of action.

84.    Plaintiff alleges Rig Ventures, Inc., Esco Marine, Inc., Dominion Shipping, Inc., Atlantic Trading Group, LLC, Fort Caswell, LLC, EsJay Green Shipping, Inc., Saber Steel, Inc., Sanco International, Inc., Sanship, Inc., Northern Bay Peat, LLC, and Pan Holding, Inc. were engaged in a conspiracy and sham to perpetrate a fraud upon Plaintiff James Gilbert in that they, through their mutual president and sole or majority shareholder, Emilio Sanchez, manipulated the less than arm's length financial transactions by and between each of them in an intentional and wrongful effort to shed Rig Ventures, Inc. of assets with which to pay any judgment as may be rendered herein.    Plaintiff alleges all facts alleged hereinabove including specifically those facts set forth above in paragraph 66 in support of the instant cause of action.

85.    Plaintiff alleges Emilio Sanchez exercised complete control over the financial transactions of these various companies in such a manner to effectively pool the assets of such companies to achieve his common business purpose.    Transactions representative of this fact include but are not limited to the following:

     a.    the write off of as bad debt of an unpaid loan by Rig Ventures, Inc. to Jonathan Feffer in the amount of approximately $703,690;

     b.    the write of as a bad debt of an unpaid loan by Rig Ventures, Inc. to Fort Caswell Properties, LLC in the approximate amount of $2,357,943;

     c.    The write off as bad debt of an unpaid loan by Rig Ventures, Inc. to Atlantic Textile in the approximate amount of $705,000; and

     d.    The write off as bad debt of an unpaid loan by Rig Ventures, Inc. to Peat Moss in the approximate amount of $601,000.

86.    Pursuant to such theory and cause of action alleged against Rig Ventures, Inc., each and every of these defendants is jointly and severally liable to Plaintiff for the damages

Plaintiff's Sixth Amended Complaint
*Gilbert vs. Rig Ventures, Inc. et al.*
Page 20

proximately caused by the negligence of Rig Ventures, Inc. and its agents, employees, and representatives as alleged herein.

## V. CAUSATION AND DAMAGES

87.    Defendants' acts and omissions, taken singularly and in combination, were a proximate cause of Plaintiff's injuries, including:

        a.     past and future medical expenses;

        b.     past and future physical pain and mental anguish;

        c.     past and future physical impairment;

        d.     past and future disfigurement; and

        e.     Past and future lost wages and lost earning capacity.

## VI. EXEMPLARY DAMAGES

88.    Defendants' acts, when viewed objectively from the standpoint of Defendants at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which Defendants had actual subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.  Plaintiff seeks an award of exemplary damages against Defendants for each act and omission plead herein, of sufficient size to punish them for their grossly negligent acts and omissions and for placing profit before safety, and to serve as a deterrent to similar conduct which may result in other injuries, suffering, and deaths in the future.

89.    Defendant Richard Jaross was a "vice principal" of Rig Ventures, Inc. as that term is defined by Texas law, thus Defendant Rig Ventures, Inc. is liable for the gross negligence and/or malice committed by Richard Jaross.

90.     Phil Wells was a "vice principal" of Rig Ventures, Inc. as that term is defined by Texas law, thus Defendant Rig Ventures, Inc. is liable for the gross negligence and/or malice committed by Phil Wells.

## VII.    JURY TRIAL

91.     Plaintiff has previously requested trial by jury pursuant to FRCP 38.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear herein and answer, and that:

1.      The Court schedule a hearing on Plaintiff's Application for Preliminary Injunction at the earliest possible time and that the above requested injunctive relief be granted;

2.      Upon final trial, Plaintiff have judgment against each and every defendant herein, jointly and severally, for his actual damages and exemplary and punitive damages as specifically set out in this pleading, together with prejudgment and postjudgment interest in the highest amount allowed by law, recoverable costs of court, and for such other and further relief, at law or equity, for which Plaintiff may show himself to be justly entitled and to which the Court and jury may believe him deserving; and

3.      Upon final trial, Plaintiff have judgment against each defendant sued herein for violations of the Uniform Fraudulent Transfer Act, in an amount sufficient to satisfy any judgment herein but not to exceed the amount transferred to any such defendant in violation of the Uniform Fraudulent Transfer Act, or in the alternative, for avoidance of any fraudulent transfer act as determined by the Court

and/or finder of fact, for reasonable and necessary attorney fees, prejudgment and postjudgment interest in the highest amount allowed by law, recoverable costs of court; and for such other and further relief, at law or equity, for which Plaintiff may show himself to be justly entitled and to which the Court and jury may believe him deserving.

Date:  October 1, 2004

Respectfully submitted,

Scott Webre
Attorney-in-Charge
Texas State Bar Number 21050070
Southern District Number 20150070
556 Jefferson Street
Jefferson Towers, Suite 200
Lafayette, Louisiana 70501
(337) 593-4178
(337) 593-4159 (fax)

Frank Costilla
Texas State Bar Number 04856500
Southern District Number 04856500
The Law Office of Frank Costilla
5 East Elizabeth Street
Brownsville, Texas 78520
(956) 541-4982
(956) 544-3152 (fax)

Ryan Krebs, M.D., J.D.
Texas State Bar Number 00792088
Southern District Number 00792088
6601 Vaught Ranch Road, Suite 100
Austin, Texas 78730
(512) 478-2072
(512) 494-0420 (fax)

By:  _____
      SCOTT WEBRE

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I certify that a true and correct copy of the foregoing document was served on counsel for all parties that have appeared, as indicated below, on this _____ day of October, 2004:

Mr. Tom Fleming                    *Via CMRRR*
Mr. Luis R. Hernandez
Fleming & Hernandez, P.C.
1650 Paredes Line Road, Suite 102
Brownsville, TX  78521


_____
SCOTT WEBRE

# EXHIBIT  2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAMES DAVID GILBERT | § | CIVIL ACTION NO. B04-CV-047 |
| | § | |
| VS. | § | |
| | § | JUDGE HILDA G. TAGLE |
| EMILIO SANCHEZ; AND | § | |
| RICHARD JAROSS; AND | § | |
| RIG VENTURES, INC.; | § | |
| ET AL | § | |

---

## EXPERT REPORT OF
## JOSEPH B. NELSON, CPA CFE CVA
### PURSUANT TO RULE 26(a)(2)(B)

### SUBMITTED AUGUST 09, 2004

---

CONFIDENTIAL INFORMATION

PREPARED FOR:  SCOTT D. WEBRE, ESQUIRE

# TABLE OF CONTENTS

PAGE

I.     QUALIFICATIONS AND EXPERIENCE................................. 3

II.    SCOPE OF ASSIGNMENT.................................................... 3

III.   ANALYTICAL AND INVESTIGATIVE
       PROCEDURES APPLIED................................................... 5

IV.    DOCUMENTS REVIEWED AND ANALYZED........................... 6

V.     ANALYSIS AND FINDINGS............................................... 10

VI.    EXPRESSION OF OPINIONS.............................................. 18

VII.   ASSUMPTIONS AND LIMITING CONDITIONS........................ 21

VIII.  COMPENSATION FOR SERVICES RENDERED........................ 22

IX.    SUMMARY AND CONCLUSION.......................................... 22

X.     EXHIBITS TO EXPERT REPORT......................................... 23

2

## I.    QUALIFICATIONS AND EXPERIENCE

I am the Managing Director of my firm that specializes in providing comprehensive litigation and fraud investigation services to corporations, individuals and the legal community. I am a Certified Public Accountant, a Certified Fraud Examiner, and a Certified Valuation Analyst. Over the past 25 years, I have gained extensive experience in the areas of fraud and forensic investigations, damage calculations in a litigation setting, dispute resolution, audit and review engagements, federal and state taxation, business valuation, and the application of Generally Accepted Accounting Principles and Procedures. I am a member of the American Institute of Certified Public Accountants, The Texas Society of Certified Public Accountants (TSCPA), The Houston Chapter of the TSCPA, The Association of Certified Fraud Examiners, The American College of Forensic Examiners, and The National Association of Certified Valuation Analysts. I am currently a Diplomate on the American Board of Forensic Examiners, a Diplomate on The American Board of Forensic Accounting, and I have Fellowship Status with the American College of Forensic Examiners. I have applied my skills in the context of legal cases and dispute resolution in a variety of areas, including comprehensive fraud investigations, breach of contract, intellectual property, business valuation, personal injury and lost wage analyses, alter ego determinations, liability analyses with respect to piercing the corporate veil, federal and state tax compliance, professional malpractice, and wrongful death proceedings. In addition to providing services to the legal community, I have been retained as a court appointed auditor, court appointed receiver, and served as an expert/consulting witness for the Federal Bureau of Investigation and The United States Department of Justice in various cities across the nation. I have testified in Federal Court, State District Court, Family Law Court and Criminal Court. My extended Curriculum Vitae is attached as Exhibit I and a listing of the cases where I have provided expert testimony (either at deposition or trial) is attached as Exhibit II.

## II.    SCOPE OF ASSIGNMENT

I have been asked to study, analyze, and provide appropriate opinions with respect to information you have provided to me. The information you have provided to me includes information provided by your client, James David Gilbert (plaintiff), as well as information provided by Emilio Sanchez, Richard Jaross,