consequences."

The Committee believes the "kit" p... would encourage rather than discourage self-representation; put an undue burden on the Clerks and Courts, and probably, in many instances, result in improper representation of a client.

**Opinion 365**
**May 1973**
Tex. Comm. On Professional Ethics, Op. 365, V. 36 Tex. B.J. 772 (1973)

**THREAT OF ADDITIONAL PROSECUTION TO ABATE APPEAL FROM JUDGMENT OF CONVICTION**

Prosecuting attorney should not do any act or take any position calculated to deny criminal defendant's right to a full and fair trial.

DR 1-102 and DR 7-103

**QUESTION**

May a prosecuting attorney use the threat of prosecuting additional pending complaints against a defendant who has been convicted in a trial court so as to discourage an appeal from such conviction?

DR 1-102 (A) (5) states as follows: "A lawyer shall not engage in conduct that is prejudicial to the administration of justice."

DR 7-103 (A) states: "A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause."

DR 7-103 (B) "A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment."

The above two quoted disciplinary rules seem to be effectively on point. DR 7-105 seems to state the matter quite clearly except that it is not directed toward a criminal matter. Such rule states "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a <u>civil matter</u>." It can be readily seen, however, that the intent of the disciplinary rules are calculated to control the conduct of lawyers in such a fashion that no person involved in litigation, criminal or civil shall be denied a full and fair trial and due process of the law. The "COMMENT" pertaining to DR 7-105 describes a threat of criminal prosecution by an attorney to be "a species of duress and actionable as an unfair collection tactic." It is certainly arguable that if such a threat of criminal prosecution can be described as duress in the field of commercial law, it would surely be nothing less that in the field of criminal law; but would be even more reprehensible.



Ethical Comment (EC) 7-13 places a rather lofty responsibility upon a public prosecutor. EC 7-13 states in part as follows: "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." It further places a responsibility upon the prosecutor to use restraint in the discretionary exercise of governmental powers. It recognizes that the prosecutor makes decisions effecting the public interest, and that these decisions should be fair to all during a trial. The Comment further recognizes that an accused is given the benefit of all reasonable doubts, and takes the position that the prosecutor should make timely disclosure to the defense of all evidence that tends to negate the guilt of the accused, mitigate the degree of the offense or reduce the punishment.

EC 7-14 when speaking about a government lawyer in a civil action or an administrative proceeding, imposes "the responsibility to seek justice and to develop a full and fair record, and the further responsibility not to use his position or the economic power of the government to harass parties or to bring about unjust settlements or results."

From the above two referenced Comments, it can be seen that the government attorney has a high responsibility to see that an accused or convicted person has his full measure of defense afforded to him. Such full measure would surely include the right to an appeal.

EC 7-21 recognizes that "the criminal process is designed for the protection of society as a whole." And then defines the threatened use of criminal process as "a subversion of that process." And then the Comment states "the person against whom the criminal process is so misused may be deterred from asserting his legal rights . . . ." Then concludes "as in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system."

It must be kept in mind, however, that every advice or disclosure by a prosecuting attorney to a defense counsel as to the existence of other pending complaints in a situation of this kind, should not be necessarily interpreted as a "threat." The government attorney has a right to exercise discretion as to the selection of cases to prosecute (EC 7-13). It may be that the defense counsel will be placed in a position to make a determination under all of the known and existing facts as to what is best for his client. DR 7-101 (B) (1) states "In his representation of a client, a lawyer may, where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client." It seems to the Committee that in certain situations such as can exist in these circumstances, a lawyer may determine that it is in his client's best interest not to appeal from the adverse decision. In making such statement, however, it should not be interpreted that this opinion again opens the door to the use of threat of additional prosecution to prevent an appeal.

Such a statement should be considered in light of ABA Informal Opinion No. 955 — "Obligation to Take Criminal Appeal" wherein the case of *Anders vs. California* 35 U.S. Law Week 4385, opinion by Justice Clark, indicates that there is not only an obligation to the client, but also to the court in such situations. And further, in ABA Informal Opinion 955, former ABA Cannon 30 (former Texas Cannon 28 now in substance DR 7-102 (A)) is quoted "The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong. His appearance in court should be deemed equivalent to an asser-

315

tion on his honor. That in his opinion his client's case is one proper for judicial determination."

It is the opinion of the Committee that the above mentioned disciplinary rules and comments clearly indicate that a prosecuting attorney should not do any act or take any position calculated to deny any criminal defendant his full rights of due process in defending himself against criminal charges.

## Opinion 366
### March 1974
### Tex. Comm. On Professional Ethics, Op. 366, V. 37 Tex. B.J. 525 (1974)

**FINANCIAL INTEREST IN BAIL BOND BUSINESS**
It is not improper for a practicing attorney to have a financial interest in a bail bond business if he does not otherwise participate in the operation of the business and will not accept employment from a person whose bail bond has been written by the business.

Code of Professional Responsibility: DR 1-201 Through DR 2-105

An attorney engaged in the general practice desires to transfer certain real property to his secretary's father who will use the property in the bail bond business. In return, the father would pay the attorney a sum equal to a fair percentage rate of return on the value of the property. The father would solely operate the business and there would be only an oral agreement that the land would be transferred back to the attorney upon demand or in case of death and subject to any liabilities for outstanding bonds. The business would be operated as a location entirely different from the attorney's office and the father would be instructed to refer no business to the attorney. Is such a business arrangement improper upon the part of the attorney?

**OPINION**
Texas Opinions 46, 140, 141, 248, 251 and 347 all deal with the question, in one form or another, of the propriety of a practicing attorney engaging in the business of making bail bonds. Opinion No. 141 holds that it is unethical for an attorney to be in any way connected with, or have an interest in, any company which is engaged in the business of making bail or other bonds in criminal cases. Such holding is, in the opinion of the Committee, too broad.

The primary basis for the above opinions has been that the operation of the bail bond business constituted "indirect solicitation" and served as a "feeder" to the law practice. These phrases have been entirely omitted from the Code of Professional Responsibility indicating an intent not to rely on such vague phrases as standards by which to judge the outside activities or occupations of attorneys. Such activities are now governed by several comprehensive but specific disciplinary rules, particularly DR 1-201 through DR 2-105.

No disciplinary rule forbids an attorney to engage in another business or profession. To the contrary, DR 2-102 (E) expressly recognizes the right of an attorney to engage in both the practice of law and another profession or business and sets forth certain prohibi-